Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff company is a Minnesota corporation, a mutual life insurance company, conducting its business on *491 the mutual level premium plan. Kecovery is sought in this case of excess-profits taxes for 1917 in the amount of $4,435.64; income taxes for the years 1917, 1918, and 1920 in the amount of $4,209.70, and capital-stock taxes for the periods beginning July 1, 1918, July 1, 1919, and July 1, 1921, in the amount of $592.65. Sums in excess of the above amounts are claimed in the petition. The amounts stated are taken from plaintiff’s brief.
Excess-profits taxes for 1917. — The plaintiff company is not a capital-stock corporation. Its net income for 1917 was $92,221.79. Under section 207 of the revenue act of October 3, 1917 (chap. 63, 40 Stat. 300), plaintiff was entitled to a deduction from its net income of 9% of its invested capital in computing excess-profits taxes. The commissioner allowed as deductible reserve funds, required by law, at the close of 1916, the sum of $4,374,834.64. The record discloses that at least $2,554,794.50 of the latter sum is made up of premium payments paid in for insurance policies. The case of Duffy v. Mutual Benefit Life Insurance Co., 272 U. S. 613, decided that premium payments received as these were should be included in invested capital. Therefore, it is apparent that in this instance the increase in the company’s invested capital by the amount of premium payments precludes the assessment of excess profits for the year involved. The defendant concedes the fact. The item, except as to the sum of $1,129.39, is contested upon the grounds of the statute of limitations. The facts are as follows: On June 17, 1918, plaintiff paid as profits tax for 1917, $4,319.00; on July 25, 1918, plaintiff filed a claim for refund of the tax, predicating its claim upon a failure of the commissioner to include certain sums in its reserve funds required by law in his computation for the ascertainment of invested capital. On May 5, 1921, the plaintiff, at the request of the commissioner, filed an unlimited waiver of all statutorj' limitations. On June 7, 1921, the refund claim of July 25, 1918, was denied. Thereafter, on November 16, 1921, the commissioner assessed an additional profits tax of $116.64 against the plaintiff. On April 4, 1925, the plain *492 tiff filed a claim for the refund of all taxes, both the original and additional assessments of profits tax. On July 31, 1925, the refund claim was again denied and this suit instituted February 11, 1926. The issue is the result of the commissioner’s mimeograph #3085 dated April 11, 1923, terminating all 1917 unlimited waivers on April 3, 1924, a ruling the commissioner asserts was compulsory under the statute limiting the filing of claims to April 1, 1924. As soon as the plaintiff learned of the above action plaintiff filed with the commissioner, on May 21, 1925, an extension of its unlimited waiver of May 5, 1921, dating the same April 30, 1925, to extend for one year from April 30, 1925.
The plaintiff’s first refund claim was filed July 25, 1918, seeking a refund of the excess-profits tax paid June 17, 1918. Before this claim was denied the commissioner requested of the plaintiff the filing of an unlimited waiver of all statutory limitations and the plaintiff complied with the request on May 5, 1921, nearly three years after the refund claim. Thereafter on June 7, 1921, the pending refund claim was denied. Subsequently, on November 16, 1921, the commissioner assessed additional excess-profits taxes to the amount of $116.64. At this point in the proceedings there was manifestly nothing in the way of an additional refund claim upon the part of the plaintiff for a refund of the excess-profits tax. True, the original refund claim had been denied, but the commissioner afforded an opportunity for an additional refund claim, and as the taxes were identical in character the refund of the additional tax would necessarily carry with it all of the tax. No limitation had intervened to prevent either the refund of the tax or the assessment of additional taxes, and even if it had the commissioner was fortified with an unlimited waiver. The commissioner on April 11, 1923, issued his mimeograph #3085 terminating all unlimited waivers as of April 1, 1924. The commissioner justified this action under section 252 of the revenue act of 1921 (42 Stat. 268), providing as follows:
“ That if, upon examination of any return of income made pursuant to * * * the Eevenue Act of 1916, as amended, the Eevenue Act of 1917, * * * it appears that an amount of income, war-profits, or excess-profits tax has *493 been paid in‘excess of that properly due, then, notwithstanding the provisions of section 3228 of the Revised Statutes, the amount of the excess shall be credited against any income, war-profits, or excess-profits taxes, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer: Provided, That no such credit or refund shall be allowed or made after five years from the date when the return was due, unless before the expiration of such five years a claim therefor is filed by the taxpayer: * *
Evidently this remedial legislation was enacted to afford the taxpayer a right which he did not possess under existing law and to empower the commissioner to grant the same. The plaintiff had filed a refund claim within the five-year period, and a reconsideration of the same would have been a legal procedure, but aside from this fact Congress amended section 252 of the act of 1921 on March 4, 1923 (42 Stat. 1504A1505), by providing as follows:
“ That if, upon examination of any return of income made pursuant to * * * the Revenue Act of 1916, as amended, the Revenue Act of 1917, * * * it appears that an amount of income, war-profits, or excess-profits tax has been paid in excess of that properly due, then, notwithstanding the provisions of section 3228 of the Revised Statutes, the amount of the excess shall be credited against any income, war-profits, or excess-profits taxes, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer: Provided, That no such credit or refund shall be allowed or made after five years from the date when the return was due, unless before the expiration of such five years a claim therefor is filed by the taxpayer, or unless before the expiration of two years from the time the tax was paid a claim therefor is filed by the taxpayer: Provided further, That if the taxpayer has, within five years from the time the return for the taxable year 1917 was due, filed a waiver of his right to have the taxes due for such taxable year determined and assessed within five years after the return was filed, such credit or refund shall be allowed or made if claim therefor is filed either within six years from the time the return for such taxable year 1917 was due or within two years from the time the tax was paid: * *
*494 By the terms of this statute plaintiff’s right to file a claim was extended to six years from the time the return was due, and in addition thereto waivers were recognized. The plaintiff’s waiver was unlimited. Without repeating in haec verba the subsequent legislation affecting the issue, we think it sufficient to observe that by the amendatory acts of 1924 (43 Stat. 302), the act of 1925 (43 Stat. 1115), and the act of 1926 (44 Stat. 66-68), the pertinent parts of which we set forth in an appendix to this opinion, it is clear that Congress was intent upon enabling taxpayers, who came within the terms of the statute, to obtain refunds if a claim for refund had been filed on or before April 1, 1926. We axe unable to perceive any other construction of the acts. A taxpayer affected by its terms, having observed the proceedings enumerated in the law, was granted the additional privilege of claiming a refund up to the dates mentioned in the laws. The defendant would deny plaintiff relief in part upon the theory that its original return due April 1,1918, extended to the plaintiff the single right to file a refund claim to April 1,1924, i. e., six years under the act of March 4,1923 {supra), at the same time conceding that the refund claim of the plaintiff filed April 4, 1925, is sufficient under the laws to entitle the plaintiff to recover $1,129.39 additional income and excess-profits taxes collected November 16, 1921. We think otherwise. Addressing attention to, but without now deciding the doubtful right of the commissioner by an ex parte proceeding, and without notice to a taxpayer bound by the same to terminate an unlimited waiver of the statute of limitations, we think the laws by express terms accorded the plaintiff the right to proceed as it did proceed. Obviously but for the action of the commissioner in seeking to terminate unlimited waivers, the plaintiff is entitled to relief. The defendant seemingly concedes the fact. Therefore it would be difficult to hold that Congress was intending to preclude the consideration of just claims to refund taxes illegally exacted when but for an administrative order of the bureau the taxpayer would be clearly entitled to recover. The taxes for 1917 were taxes which accrued during the war. The bureau and the taxpayer were affected by existing con *495 ditions at the time the returns were made, and Congress, in enacting the various remedial amendments extending the time for refund claims and adjustments, clearly recognized the existence of a substantial right, and precludes resort to a strict technical construction of the statutes.
The findings, due to an indispensable array of figures, are more or less perplexing. The court has simplified them as much as possible. The necessity for their length is due to requests under the rule made before trial for findings which the parties deemed essential. The issue with respect to the remaining items of the suit is narrowed to a single controversy, one quite involved and not without apparent difficulties. The commissioner in computing the plaintiff’s income and capital-stock taxes for the years stated in the findings refused to allow as a deduction from plaintiff’s gross income the net additions to its deferred dividend reserves, a reserve maintained by the plaintiff and required by the law of Minnesota.
The revenue act of 1918 (40 Stat. 1079) provides as follows:
“ (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:
“(10) In the case of insurance companies, in addition to the above: (a) The net addition required by law to be made within the taxable year to reserve funds * * * ; and
(b) the sums other than dividends paid within the taxable year on policy and annuity contracts.”
We quote this section inasmuch as it is in effect a reenactment of the same section of the revenue act of 1916 (39 Stat. 767).
Insurance companies, both fire and life, have been many times before the courts contending for a deduction of net additions to reserve funds required by law from their gross income in computing the net income of the company. The general insistence is not a new one. The novelty of the present contention is due wholly to the character of the reserves involved herein. A review of the many cases cited in the briefs puts at rest certain fundamental principles *496 by which the subject is to be approached and applicable in ascertaining the intention of the Congress in enacting the provision of law. First: It is established by judicial precedent that Congress was dealing with the isolated subject of insurance, and in employing the term “ reserve ” the intention was to attach to it the special and technical meaning it has in the law of insurance. Maryland Casualty Co. v. United States, 251 U. S. 342, 350; Fry v. Provident Savings Life Assurance Society, 38 S. W. 116; Fink v. Northwestern Mutual Life Insurance Co., 267 Fed. 968, 973. Second: It seems clear from decided cases that the enactment of a State law or the promulgation of requirements by a State insurance commissioner under a State statute is not sufficient of itself to authorize the commissioner to make deductions of all character of net additions to reserve funds upon this single basis. McCoach v. Insurance Co. of North America, 244 U. S. 585. In the case of United States v. Boston Insurance Co., 269 U. S. 197, 202, the Supreme Court said:
“ It follows from McCoach v. Insurance Co. that the permitted deductions specified by section 12, act of 1916, do not necessarily include anything which may be denominated £ reserve fund ’ by State statute or officer.”
The plaintiff conducts its business on the mutual level premium plan. The surplus of the company, which forms the fund from which profit accrues to the policyholders of designated classes who survive the period of maturity, is accumulated by the difference between the sum of the actual premium annually paid in and the expense of conducting the business of the company. This fund, augmented by accretions from investments made thereof, constitutes the assets of the company, which by the terms of the policies issued, accords the insured the right of participation therein if he lives long enough to mature his policy, usually from ten to fifteen, or twenty years. As said by the Supreme Court in Penn Mutual Life Insurance Co. v. Lederer, 252 U. S. 523, 531 :
“ But in level-premium life insurance, while the motive for taking it may be mainly protection, the business is largely that of savings investment. The premium is in the nature *497 of a savings deposit. Except where there are stockholders, the savings bank pays back to the depositor his deposit with the interest earned less the necessary expense of management. The insurance company does the same, the difference being merely that the savings bank undertakes to repay to each individual depositor the whole of his deposit with interest ; while the life insurance company undertakes to pay to each member of a class the average amount (regarding the chances of life and death); so that those who do not reach the average age get more than they have deposited; _ that is, paid-in premiums (including interest) and those who exceed the average age less than they deposited (including interest). The dividend of a life-insurance company may be regarded as paying back part of these deposits called premiums. The dividend is made possible because the amounts paid in as premium have earned more than it was assumed they would when the policy contract was made, or because the expense of conducting the business was less than it was then assumed it would be or because the mortality— that is, the deaths in the class to which the policyholder belongs — proved to be less than had then been assumed in fixing the premium rate. * * * But after the policy is paid up, the element of investment predominates and Congress might reasonably regard the dividend substantially as profit on the investment.”
As a matter of fact, the surplus is the single asset of a noncapital stock company from which the tontine policyholders derive a profit in the way of dividends. The payment of deferred dividends depends upon the state of the company’s affairs during the annual period of their accumulation, the business sagacity exhibited in financial management, the state of the investment market, and a variety of factors always present in the conduct of the business, so that in so far as State legislatures compel reserves to prevent diversions or unwise uses of the surplus fund, the restraint is manifestly directed toward the solvency of the company, an assurance to policyholders of payment of dividends, rather than the universal reserve recognized in the insurance business as essential to protect contingent liabilities to policyholders. That the surplus is essentially income to the corporation, as distinct from the expense of operation and other policy obligations, is apparent, and originally the corn- *498 panies were not required to reserve against deferred dividend payments. The plaintiff recites in its brief the cause for such legislation, attributing its origin in part at least to the misuse of the surplus and its depletion through diversion to purposes inimical to the interests of policyholders.
In New York Life Insurance Co. v. Edwards, 271 U. S. 109, the Supreme Court again applied the principles of the McCoach and Boston Insurance Company cases. On page 116 of the opinion the court said:
“ Overpayments by deferred dividend policyholders for 1912 amounted to $8,198,918.00. The collector refused to deduct this sum from the total receipts and demanded the prescribed tax of one per centum thereon. We think he acted properly. Both courts below so held.
“ The applicable doctrine was much considered in Penn Mutual Life Insurance Co. v. Lederer, 252 U. S. 523. We there pointed out the probable reason for the permitted non-inclusion in the net income of a life insurance company of * such portion of any actual premium received from any individual policyholder, as shall have been paid back or credited to such individual policyholder, or treated as an abatement of premium of such individual policyholder, within such year.’ Here it is insisted that within thq meaning of the quoted provision each deferred dividend policyholder’s overpayment was actually credited to him during the year; but we can not accept this theory. The aggregate of all such payments was held for distribution among policyholders alive at the end of the period. The receipts for the year were not really diminished.”
While both the Penn Mutual and the Edwards eases did not involve the issue of “ net additions to reserve funds required by law,” we abstract from the opinions the governing principle that the purpose of Congress in the taxing act was to restrict the allowable deductions to the class of reserves required “ as against the contingent liability on outstanding policies.” Deferred dividends, as the term imports, are retained by the company for years. The question of an annual allocation of deferred dividends is contingent upon the prosperity of the company, and the statutory requirement as to a reserve against the liability is, it *499 seems to us, no more than a wholesome provision that the stated annual financial condition of the company in this respect shall be maintained.
In view of the cases which have been decided, we think the petition as to those items of fhe claim must be dismissed. It is so ordered.
Sinnott, Judge; Green, Judge; Moss, Judge; and Graham, Judge, concur.
APPENDIX
AMENDATORY ACTS
Bevenue act of 1924:
“ Sec. 281 (e). If the taxpayer has, within five years from the time the return for the taxable year 1917 was due, filed a waiver of his right to have the taxes due for such taxable year determined and assessed within five years after the return was filed, or if he has, on or before June 15, 1924, filed such a waiver in respect of the taxes due for the taxable year 1918, then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed either on or before April 1, 1925, or within four years from the time the tax was paid.” (43 Stat. 302.)
Bevenue act of 1925:
“That subdivision (e) of section 281 of the revenue acl of 1924 is amended by adding thereto two neiv sentences co read as follows: ‘ If the taxpayer has, on or before June 15, 1925, filed such a waiver in respect of the taxes due for the taxable year 1919, then such credit or refund relating to the taxes for the taxable year 1919 shall be allowed or made if claim therefor is filed either on or before April 1,1926, or within four years from the time the tax was paid. If any such waiver so filed has, before the expiration of the period thereof, been extended either by the filing of a new waiver or by the extension of the original waiver, then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed either (1) within four year's from the time the tax was paid, or (2) on or before April *500 1,1926, in the case of credits or refunds relating to the taxes for the taxable years 1917 and 1918, or on or before April 1, 1927, in the case of credits or refunds relating to the taxes for the taxable year 1919.’ ” (43 Stat. 1115.)
Revenue act of 1926:
“ Sec. 284 (g). If the taxpayer has, within five years from the time the return for the taxable year 1917 was due, filed a waiver of his right to have the taxes due for such taxable year determined and assessed within five years after the return was filed, or if he has, on or before June 15, 1924, filed such a waiver in respect ox the taxes due for the taxable jnar 1918, then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed either on or before April 1, 1925, or within four years from the time the tax was paid. If the taxpayer has, on or before June 15, 1925, filed such a waiver in respect of the taxes due for the taxable year 1919, then such credit or refund relating to the taxes for the taxable year 1919 shall be allowed or made if claim therefor is filed either on or before April 1, 1926, or within four years from the time the tax was paid. If the taxpayer has, on or before June 15, 1926, filed such a waiver in respect of the taxes due for the taxable year 1920 or 1921, then such credit or refund relating to the taxes for the taxable year 1920 or 1921 shall be allowed or made if the claim therefor is filed either on or before April 1, 1927, or within four years from the time the tax was paid. If anjr such waiver so filed has, before the expiration of the period thereof, been extended either by the filing of a new waiver or by the extension of the original waiver, then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed either (1) within four years from the time the tax was paid, or (2) on or before April 1, 1926, in the case of credits or refunds relating to the taxes for the taxable years 1917 and 1918, or on or before April 1, 1927, in the case of credits or refunds relating to the taxes for the taxable year 1919, or on or before April 1, 1928, in the case of credits or refunds relating to the taxes for the taxable years 1920 and 1921. This subdivision shall not authorize a credit or refund prohibited by the provisions of subdivision (d).” (44 Stat. 66-68.)