## UNITED STATES *v.* BOSTON INSURANCE COMPANY.

APPEAL FROM THE COURT OF CLAIMS.

No. 29.   Argued October 9, 1925.—Decided November 23, 1925.

The Revenue Act of 1916, § 12, Par. " First," subdiv. (c), in defining deductions from gross income allowable in ascertaining the net income of domestic corporations, included, in the case of insurance companies, " the net addition, if any, required by law to reserve funds." *Held*, that " reserve funds " does not embrace funds held by a fire and marine insurance company, as required by the New York Superintendent of Insurance, to cover accrued but unsettled claims for losses. *McCoach* v. *Insurance Co.*, 244 U. S. 585, followed; *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, explained and in part disapproved.   P. 202.

58 Ct. Cls. 603, reversed.

APPEAL from a judgment of the Court of Claims allowing recovery of an amount exacted of the Insurance Company as income taxes.

*Mr. Alfred A. Wheat*, Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

*Mr. Abram R. Serven*, with whom *Messrs. John G. Carter* and *John W. Smith* were on the brief, for appellee.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Appellee, a domestic corporation, carries on the business of issuing fire and marine insurance policies in Massachusetts, New York and elsewhere.   It sued to recover $8,755.92, exacted as income tax for 1916 (Act Sept. 8, 1916, 39 Stat. 756), and maintains that the addition made during the year to its reserve funds, " in the amount and on account of its liabilities for unsettled loss claims," as

required by the Superintendent of Insurance for New York, should have been deducted from gross income in order to determine the net sum subject to taxation. The amount of the deduction claimed was ascertained by subtracting $775,900.10, the reserve for loss claims on December 31, 1915, and required as condition precedent to doing business within New York during the following year, from $1,336,578.53, the amount necessary therefor during 1917.

The Revenue Act of 1916 levied an annual tax upon the net income received during the preceding year by domestic insurance companies, and provided—

"SEC. 12. (a) In the case of a corporation, joint-stock company or association, or insurance company, organized in the United States, such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—

"First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity.

"Second. All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, including a reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade; (a) in the case of oil and gas wells a reasonable allowance for actual reduction in flow and production to be ascertained not by the flush flow, but by the settled production or regular flow; (b) in the case of mines a reasonable allowance for depletion thereof not to exceed the market value in the mine of the product thereof which has been mined and sold during the year for which the return and computa-

tion are made, such reasonable allowance to be made in the case of both (a) and (b) under rules and regulations to be prescribed by the Secretary of the Treasury . . . and (c) *in the case of insurance companies, the net addition, if any, required by law to be made within the year to reserve funds and the sums other than dividends paid within the year on policy and annuity contracts.*"

During 1915, 1916 and 1917, as a condition precedent to the right to do insurance business in the State, the New York Superintendent of Insurance required the following reserves—

"*Stock, fire and marine insurance companies*

"A. Loss reserve, including all unpaid losses and estimated expense of investigations and adjustment thereof, less admitted reinsurance.

"B. Reserve for unearned premiums as required by statute and departmental regulations, i. e. (*a*) on fire insurance risks a sum equal to the actual unearned premium on the policies in force calculated on the gross sum without any deduction except for admitted reinsurance, and (*b*) on marine hull risks calculated in the same manner and on marine cargo risks 100 per cent. of the last month's gross premium writings.

"C. Reserve for all other outstanding liabilities due or accrued.

"*Stock, casualty, surety and credit insurance companies*

"A. Loss reserve, including all unpaid losses and estimated expense of investigation and adjustment thereof, whether on account of compensation and liability insurance or otherwise, less admitted reinsurance, and such additional contingent reserves for losses as may be required by the Superintendent of Insurance.

"B. Unearned premium or reinsurance reserve calculated as required by statute and all premiums paid in advance at 100 per cent.

" C. Reserve for all other outstanding liabilities due or accrued."

The Superintendent did not direct that funds to meet liabilities should be kept separate and distinct from other assets. They were specified by book entries as (1) reserves to meet liabilities for unearned premiums, (2) unpaid loss claims and (3) all other outstanding liabilities, due or accrued. He required all companies to keep on hand sufficient assets to meet every liability.

The opinion of the Court of Claims, 58 Ct. Cls. 603, states:

" The one question, and the only one properly raised, is whether, within the meaning and intent of the Federal revenue act, the net additions so made by the plaintiff to its reserve funds in pursuance of the requirements of the superintendent of insurance for New York, to cover accrued but unsettled loss claims, may be said to be such a fund as comes within the meaning of ' reserve funds,' as those terms appear in the revenue act.

" The defendant does not dispute that the sum involved was reserved, nor that it was required by the proper insurance authorities of New York to be reserved. Defendant's argument is predicated upon an assertion that Congress in exempting net additions to reserve funds, clearly intended to exempt only such funds as are technically known and universally understood in the insurance world as reserve funds, and as thus understood the terms have a well defined, limited, and certain status and meaning."

Following *Maryland Casualty Co.* v. *United States,* 251 U. S. 342, 350, that court held the " loss claims item " was a " net addition " required by law to be made to "reserve funds " within the meaning of the Act of 1916 and gave judgment for the appellee.

We think *McCoach* v. *Insurance Co. of North America,* 244 U. S. 585, 589, is conclusive of the issue here presented; and appellee's claim must be denied. There a fire

and marine insurance company sought to recover the tax assessed upon the addition during the year to " reserve funds " held against accrued but unpaid losses.   Through Mr. Justice Pitney this court said:

The question is " whether, within the meaning of the Act of Congress, ' reserve funds,' with annual or occasional additions, are ' required by law,' in Pennsylvania, to be maintained by fire and marine insurance companies, other than the ' unearned premium ' or ' reinsurance reserve,' known to the general law of insurance.   .   .   .

" It appears that under this legislation, and under previous statutes in force since 1873, the insurance commissioner has required plaintiff and similar companies to return each year, as an item among their liabilities, the net amount of unpaid losses and claims, whether actually adjusted, in process of adjustment, or resisted.   And, although this practice has not been sanctioned by any decision of the Supreme Court of. the State, it is relied upon as an administrative interpretation of the law.

" Conceding full effect to this, it still does not answer the question whether the amounts required to be held against unpaid losses, in the case of fire and marine insurance companies, are held as ' reserves,' within the meaning of the Pennsylvania law or of the Act of Congress, however they may be designated upon the official forms.   As already appears, the Pennsylvania Act specifically requires debts and claims of all kinds to be included in the statement of liabilities, and treats them as something distinct from reserves.   The object is to exercise abundant caution to maintain the companies in a secure financial position.

" The Act of Congress, on the other hand, deals with reserves not particularly in their bearing upon the solvency of the company, but as they aid in determining what part of the gross income ought to be treated as net income for purposes of taxation.   There is a specific

provision for deducting 'all losses actually sustained within the year and not compensated by insurance or otherwise.' And this is a sufficient indication that losses in immediate contemplation, but not as yet actually sustained, were not intended to be treated as part of the reserve funds; that term rather having reference to the funds ordinarily held as against the contingent liability on outstanding policies.

" In our opinion the reserve against unpaid losses is not 'required by law,' in Pennsylvania, within the meaning of the Act of Congress."

It follows from *McCoach* v. *Insurance Co.* that the permitted deductions specified by § 12, Act 1916, do not necessarily include anything which may be denominated " reserve fund " by state statute or officer. We there distinctly ruled that the " reserve fund " of the Federal Act did not include something held by a fire and marine insurance company to cover accrued but unsettled claims for losses. We adhere to and reaffirm that doctrine. How far it must be modified, if at all, in respect of insurance companies which issue casualty, surety or liability policies or similar obligations is not now before us.

Our opinion in *Maryland Casualty Co.* v. *United States* contains the following passage [p. 348]: " Unearned premium reserve and special reserve for unpaid liability losses are familiar types of insurance reserves, and the Government, in its amended returns, allowed these two items, but rejected the third, ' Loss claims reserve.' The Court of Claims, somewhat obscurely, held that the third item should also be allowed. This ' Loss claims reserve ' was intended to provide for the liquidation of claims for unsettled losses (other than those provided for by the reserve for liability losses) which had accrued at the end of the tax year for which the return was made and the reserve computed. The finding that the Insurance Department of Pennsylvania, pursuant to statute, has at all times

since and including 1909 required claimant to keep on hand, as a condition of doing business in that State, ' assets as reserves sufficient to cover outstanding losses,' justifies the deduction of this reserve as one required by law to be maintained, and the holding that it should have been allowed for all of the years involved is approved." Upon a re-examination of the record it becomes plain that we misapprehended the opinion and ruling of the lower court; also that the reason advanced to support our conclusion is insufficient. The Commissioner of Internal Revenue had refused to allow the deduction claimed because of addition to the reserve for unpaid loss claims (except liability claims—the net addition to which reserve was allowed). The Court of Claims, in a perplexing opinion, approved the Commissioner's action. The finding that the Insurance Department of Pennsylvania, pursuant to statute, had at all times since and including 1909 required claimant to keep on hand, as a condition of doing business in the State, "assets as reserves sufficient to cover outstanding losses," without more, was not sufficient to justify the deduction of the reserve as one required by law to be maintained, within the meaning of the Act of Congress. This had been announced by *McCoach* v. *Insurance Co.*

The *Maryland Casualty Company's Case* involved many items of complicated returns and reassessments. The record is confused, but the findings supply no adequate ground for any holding contrary to the general doctrine which we had theretofore approved. The principal business of the company was employers' liability, accident and workmen's compensation insurance, and it may be that considering certain state statutes, practice and general understanding, the term " reserve fund " when used relative to the affairs of such a company should be given broader significance than when it refers only to fire and marine insurance. But if relied upon these things should be shown.

Appellee's claim is not well founded and the judgment of the Court of Claims must be

*Reversed.*