UTAH HOME FIRE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21673, 28942.   Promulgated September 29, 1931.

*Benjamin H. Saunders, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

226

OPINION.

GOODRICH: That the amount of the net decrease in reinsurance or unearned premium reserve disclosed by a fire insurance company at the close of a taxable period, or, in other words, the actual amount of premiums earned during the period, is to be included in gross income for that period is too well established to merit further discussion here. The method to be followed in computing the taxable income of an insurance company, and the various provisions of the statutes under which its tax liability arises, have likewise previously been determined. See *Union Underwriters of New York et al.*, 4 B. T. A. 472; *Massachusetts Fire & Marine Insurance Co.*, 16 B. T. A. 625; *Central National Fire Insurance Co.*, 22 B. T. A. 1054; *Maryland Casualty Co. v. United States*, 251 U. S. 342, and cases there cited.

This petitioner does not quarrel with the principal laid down in the cases above cited, but contends that, of the net decrease in its reinsurance reserve for the year 1921, the amount of $115,832.74 rep-

resented the return of capital or surplus which, in the year 1920, it had been forced to transfer to its reinsurance reserve because its income for the year 1920 lacked that much of meeting its required increases to that reserve; that, of the net decrease in its reinsurance reserve for the year 1925, the amount of $61,451.87 represented the return of capital or surplus which, in the year 1924, it had been forced to transfer to its reinsurance reserve because its income for the year 1924 lacked that much of meeting its required increases to that reserve; and that to include these amounts in its income for the years 1921 and 1925, respectively, as a part of the funds released from the reinsurance reserve in those years, would be to tax, not income, but capital. In short, it contends that these amounts, when added to its reserve, were not derived from premiums received upon insurance written, but were transferred or borrowed from capital account and should be permitted to return to that source without tax.

We can not accept petitioner's views of the case, because we are not convinced that these amounts, or any part of them, came from capital or surplus when added to petitioner's unearned premium reserve. On the contrary, we believe there is no doubt but that they were derived from premiums received upon insurance written and that, therefore, when released from that reserve they are to be included in gross income. This must be so because of the very nature of the unearned premium reserve. Huebner, in his work on Property Insurance, p. 217, says:

The reserve in fire insurance has its origin in the fact that the insurer collects the whole premium in advance, whereas protection can only be given as time elapses during the one, two or five-year policy period. It may be defined as that portion of the premium which the Company has not yet had time to earn.

This unearned portion of the premium constitutes the reserve. * * *

And this reserve, the unearned premium or reinsurance reserve, is the only true reserve of a fire or marine insurance company within the meaning of the Federal statutes imposing taxes upon net income. *United States* v. *Boston Insurance Co.*, 269 U. S. 197; *McCoach* v. *Insurance Co. of North America*, 244 U. S. 585.

How, then, can it be said that the income of a fire insurance company is insufficient to provide for the requisite additions to its unearned premium reserve? It would seem that its income would always be sufficient to provide for this reserve, for the reason that the reserve, and all additions thereto, comes into existence only when premiums are actually received, paying in advance for protection over a future period. The unearned portion of such premium neces-

sarily is added to the reserve, and since the whole premium has been received before the addition is made, certainly the reserve has been provided for from income. It is true that as a result of its bookkeeping, by giving priority to other entries and charges, by first charging its expenses, its claims or losses against its receipts, a company may show that transfers must be made, on its books, from capital, from surplus, or from nontaxable income, to account for the required additions to its reserve because the remaining portion of its receipts is insufficient for this purpose, but bookkeeping methods can not gainsay the fact that the income was sufficient to provide for the necessary additions to the reserve, for the funds for that purpose were actually received.

So with the case at bar. If petitioner preferred to first pay its expenses from funds received and then accrue its losses and claims against the unearned premium reserve, and then replace the reserve from nontaxable income and surplus, it may not for that reason claim a deduction from the amounts released from reserve in a subsequent year because that reserve represents income received, either in cash or by credits, but not taxed in a prior year and not a combination of income and various capital accounts as petitioner contends.

Since we hold that no part of petitioner's reinsurance reserve was in fact derived from capital, surplus, or nontaxable income, it is unnecessary to consider the amendment made to its petition alleging that section 246 of the Revenue Act of 1924 is unconstitutional if construed as permitting the inclusion in income of such items, temporarily set aside into reserve as required by law, when released from such reserve.

-Reviewed by the Board.

*Judgment will be entered for respondent.*

---

Murdock, concurring: I believe that the correct result has been reached in this case. The only question in the case is, How much, by way of premiums, did the company earn during the year? This being so, it seems to me unnecessary to discuss the question of where the actual dollars came from which went into the reserve or which were released from the reserve. If in prior years, surplus had to be reduced in order to set up the reserve, that fact has no effect upon income for the current year.