MASSACHUSETTS MUT. LIFE INS. CO. v. UNITED STATES.

No. J–119.

Court of Claims.
March 7, 1932.

Plaintiff seeks to recover $56,083.04 income tax alleged to have been erroneously and illegally collected for the calendar year 1923. Under section 245 (a) (2), Revenue Act of 1921 (42 Stat. 261), the plaintiff was entitled to deduct from its gross income, as defined by section 244 of the act, 4 per centum of the mean of its reserve funds required by law and held at the beginning and end of the taxable year. In determining the deduction from its gross income on account of the reserve funds required by law, the Commissioner of Internal Revenue refused to include in such reserve (1) dividends left with the company to accumulate at interest and accrued interest thereon; (2) dividends or other profits due policyholders, including those contingent upon payment of outstanding and deferred premiums; (3) dividends declared on or apportioned to annual dividend policies payable to policyholders to and including May 31, 1923, and 1924, whether contingent upon the payment of renewal premiums or otherwise; and (4) policy claims (paid for basis).

The total of the claimed reserve funds for items 1, 2, 3, and 4 is $22,433,213.17; the mean thereof for the taxable year $11,216,606.58, and 4 per centum of this mean is $448,664.26. If the last-mentioned amount is a proper deduction from gross income, the plaintiff is entitled to judgment for an overpayment of $56,083.04. The question is whether all, or any, of the claimed reserves were "reserve funds required by law" within the meaning of section 245 (a) (2), supra.

### Special Findings of Fact.

1. Plaintiff is a mutual life insurance company, organized and existing under the laws of the commonwealth of Massachusetts. During 1922 and 1923 it was engaged in the business of making and selling life insurance, on the level premium plan, in the commonwealth of Massachusetts, the state of Connecticut, and all other states of the United

States, except Arizona, Mississippi, Montana, Nevada, New Mexico, North Dakota, South Carolina, Texas, and Wyoming, and, during said years, it complied with the insurance laws and the requirements, rules, and regulations of the insurance departments of the respective states in which it carried on or transacted its business.

2. The Commissioner of Internal Revenue, in his determination of plaintiff's tax liability for the calendar year 1923 under the provisions of the Revenue Act of 1921, refused, in computing the deduction of 4 per cent. of the mean of plaintiff's reserve funds required by law, specified in section 245 (a) (2) of said act, to include as a part of said reserve funds at the beginning and the end of the taxable year the amounts set forth by plaintiff in its annual statement to the insurance department of the commonwealth of Massachusetts (1) dividends left with the company to accumulate at interest and accrued interest thereon; (2) dividends or other profits due policyholders, including those contingent upon payment of outstanding and deferred premiums; (3) dividends declared on or apportioned to annual dividend policies payable to policyholders to and including May 31, 1923, and 1924, whether contingent upon the payment of renewal premiums or otherwise; and (4) policy claims (paid-for basis).

3. The amount of plaintiff's policy claims (paid-for basis) at the beginning of the year 1923 was $407,414.62 and at the end of the year, $512,272.46, and consisted of amounts payable by the company on account of death losses, matured endowments, disability benefits, and annuities, the events giving rise to said policy claims having already occurred, or which, from its experience, the company assumed had already occurred. Interest was credited to some of the above items and to the major portion of the largest item for the year, and interest so credited was deducted by the taxpayer in its return for the year in which paid.

4. The amount of dividends left with the company to accumulate at interest and accrued interest thereon was $7,087,868.28 at the beginning of the year 1923, and was $8,522,355.38 at the end of said year, and consisted of actual dividends declared by the company and left with the company to accumulate at interest, and represented refunds to the company's policyholders of the excess of premiums paid over the amounts required to maintain the company's legal reserve and to contribute a fair share to its surplus. The amount of said dividends was subject to the determination of plaintiff's board of directors in their discretion, and plaintiff's policyholders had the option of withdrawing their dividends at any time in cash.

5. The amount of dividends or other profits due policyholders, including those contingent on payment of outstanding and deferred premiums, was $221,732.51 at the beginning of the year 1923, and was $256,659.39 at the end of said year, and consisted of dividends declared which the insured had not collected, principally on paid-up policies where the company had been unable to locate the insured or where the dividend check had not been cashed at the end of the year. No interest was credited by plaintiff to this account, nor was there any element of life risk or insurance in said account.

6. The amount of dividends declared on or apportioned to annual dividend policies payable to policyholders to and including May 31, 1923, and 1924, whether contingent upon the payment of renewal premiums or otherwise, was $2,514,446 at the beginning of the year 1923, and was $2,910,466.53 at the end of said year, and consisted of dividends declared in January, 1923, payable on the anniversaries of the respective policies between January 1, 1924, and May 31, 1924. No interest was credited by plaintiff to this account.

7. The policy contract issued by plaintiff during the entire year 1923 is in evidence as Plaintiff's Exhibit 10 and is made a part hereof by reference. The premiums and reserves under plaintiff's policy contracts were based upon the American Experience Table of Mortality and interest at the rate of $3\frac{1}{2}$ per cent. per annum and were computed as the single premium for the benefit, minus the present value of future premiums. None of the amounts involved in the four items in controversy in this case were computed on the basis of the laws of mortality and interest.

8. Plaintiff's assets held during the year 1923 were not segregated or specifically earmarked, although the amounts here in controversy were entered upon its books and set forth in its annual statement to the insurance departments of the various states, in which it did business, as separate items.

9. Plaintiff duly filed claims for refund claiming the items and the amounts hereinbefore mentioned as a part of its reserve funds required by law. The Commissioner of Internal Revenue rejected the claims as to all of these items. Suit was timely instituted.

10. Four per centum of the mean of the claim of reserves for dividends left with the company to accumulate at interest and accrued interest thereon, and other dividends to policyholders and policy claims which the Commissioner of Internal Revenue refused to allow, is $448,664.26. The allowance of this amount, as a deduction from gross income for 1923, would result in an overpayment of $56,083.04.

Guy Patten, of Washington, D. C. (A. R. Serven, John W. Smith, and John G. Carter, all of Washington, D. C., on the brief), for plaintiff.

Lisle A. Smith, of Washington D. C., Charles B. Rugg, Asst. Atty. Gen., and Edward H. Horton, of Washington, D. C., for the United States.

Before BOOTH, Chief Justice and LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

The Commissioner of Internal Revenue refused to allow the additional reserves claimed by plaintiff on the ground that they were not reserves required by law within the meaning of section 245 (a) (2) of the Revenue Act of 1921 and article 681 of reg. 62. The pertinent provisions of the revenue act of 1921, 42 Stat. 227, 261, are as follows:

"Sec. 243. That in lieu of the taxes imposed by sections 230 and 1000 and by Title III, there shall be levied, collected, and paid for the calendar year 1921 and for each taxable year thereafter upon the net income of every life insurance company a tax as follows:

"(1) In the case of a domestic life insurance company, the same percentage of its net income as is imposed upon other corporations by section 230. * * *

"Sec. 244. (a) That in the case of a life insurance company the term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents. * * *

"Sec. 245. (a) That in the case of a life insurance company the term 'net income' means the gross income less—* * *

"(2) An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subdivision, of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year. * * *

"(8) All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title."

Plaintiff is a mutual life insurance company organized under the laws of the commonwealth of Massachusetts, and transacted its business on the level premium plan. It complied with the insurance laws of Massachusetts and Connecticut. The laws in the commonwealth of Massachusetts contained the same provisions, in effect, as the laws of Connecticut, but in more general terms. The reserves maintained by plaintiff, in compliance with the laws of the strictest state, inured to the benefit of policyholders in the state and every other state in which it did business. Under the level premium plan the insured pays during his early years a sum in excess of the cost of his insurance. The excess is devoted to the creation of a reserve fund which enables the insurance to be maintained in later years when the stipulated level premium would be insufficient to meet the current costs of insurance on the mutual-premium plan.

The table rate of premiums provided for in life insurance on the mutual level premium plan is calculated, first, by adopting an accepted table of mortality showing the death rate for every age of life, and, second, by adopting an assumed rate of interest, such as the company may safely expect to realize upon the investment of the amounts of such premiums for the duration of all of its policies. With these two factors, a calculation is made of the sum each insured must pay in advance so as to put the company in funds with which to pay all outstanding policies as they become claims, providing deaths occur exactly in accordance with the table of mortality, and also providing the rate of interest earned on the company's invested funds is exactly the same as the rate assumed in calculating its premiums. The sum ascertained in this way is called the net or mathematical premium.

The calculation of the reserve is thus an actuarial function, and, being the amount theoretically necessary for reinsuring the risks, is sometimes called the reinsurance fund or reinsurance reserve. As applied to a policy, the term means value or valuation,

but that part of the assets of the company which, according to a specified table of mortality, with interest at the assumed rate, must be set apart to meet or mature the company's obligation to the insured on his death or upon the surrender or cancellation of his policy.

Under the laws of the state of Connecticut, chapter 213, sections 4110, 4111, and 4112 of the Laws of the State of Connecticut, Revision of 1918, and chapter 76, 1919, Laws of the State of Connecticut, this reinsurance reserve is the minimum standard valuation for contracts issued before January 1, 1921, based upon the actuaries' or combined experience table of mortality, with interest at 4 per cent. per annum, and on policies issued after that date based upon the American Experience Table of Mortality, with interest at 3½ per cent. per annum. As thus calculated, this reinsurance reserve is, we think, the reserve which has a technical and special meaning in the law of insurance and is the reserve required by law within the meaning of the federal statutes in so far as the question here involved is concerned. None of the reserves here claimed is calculated upon the basis above set forth, and possess none of the characteristics of the legal reserve required by law, as above described. McCoach v. Insurance Co. of North America, 244 U. S. 585, 37 S. Ct. 709, 61 L. Ed. 1333; Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; United States v. Boston Insurance Co., 269 U. S. 197, 46 S. Ct. 97, 70 L. Ed. 232; New York Life Insurance Co. v. Edwards, 271 U. S. 109, 46 S. Ct. 436, 70 L. Ed. 859; and Minnesota Mutual Life Insurance Co. v. United States, 66 Ct. Cl. 481, 498, certiorari denied 279 U. S. 856, 49 S. Ct. 352, 73 L. Ed. 998.

It may be conceded that the reserves here in question are required to be maintained by plaintiff under the laws of the commonwealth of Massachusetts and the state of Connecticut as a condition to the continued transaction by plaintiff of its business as a life insurance company. But all reserves required by state statutes or state officials are not reserves required by law within the meaning of the federal statutes, and only those may be considered reserves required by law which aid in determining what portion of the gross income constitutes the net income of a life insurance company for the purpose of the federal statutes. McCoach v. Insurance Co. of North America, supra; United States v. Boston Insurance Co. supra; and Minnesota Mutual Life Insurance Co. v. United States, supra.

The plaintiff argues that the cases above cited are not in point, since they arose under the revenue acts prior to 1921, and the Revenue Act of 1921 changed the method of taxing life insurance companies. We are of opinion, however, that the legal reserve required by law within the meaning of the federal statute was not changed by the Revenues Act of 1921. Under all of the revenue acts prior to that of 1921, beginning with the Corporation Excise Tax Act of August 5, 1909, a special excise tax measured by net income was imposed upon life insurance companies by the United States, although, under the various acts, the items to be included in gross income and the items subject to deductions have varied. Until the enactment of the Revenue Act of 1921, however, the gross income of such companies included their premium receipts.[1]

Under all of these acts such companies were permitted to deduct the amounts paid on policies, except as dividends, and the amount required by law to be added to their legal reserve, i. e., the net additions to the legal reserve required by law.

The inclusion of premium receipts with the deductions specified gave rise to much litigation, and was generally unsatisfactory.[2] In the Revenue Act of 1921, Congress adopted a new basis of computing the net taxable income of such companies, and therein provided that the gross income of such companies should consist of investment income, that is, income from interest, dividends, and rents, and, in order to ascertain the net taxable income, provided for nine classes of deductions, one of which is the deduction permitted by section 245 (a) (2) here under consideration.

In the report of the Committee on Ways and Means, revenue bill of 1921, No. 350, p. 14, 67th Congress, 1st session, it was said: "The provisions of the present law applicable to life insurance companies are imperfect and productive of constant litigation. Moreover, the taxes paid by life insurance companies under the income tax are inadequate. It is accordingly proposed in lieu of all other taxes to tax life insurance companies on the basis of their investment income from interest, dividends, and rents, with suitable deduc-

---

[1] Act of August 5, 1909, 36 Stat. 11, 112; Act of October 3, 1913, 38 Stat. 114, 172, 173; Act of September 8, 1916, 39 Stat. 756, 765-768; Act of February 24, 1919, 40 Stat. 1057, 1075-1079.

[2] Hearings before the Committee on Ways and Means, H. R., Part I, 65th Congress, 2d session; Senate Report No. 617, p. 9, 65th Congress, 3d session. Proceedings of the 14th annual meeting of life-insurance presidents, December, 1929, pp. 140-145.

tion for expenses fairly chargeable against such investment income. * * * "

The act made a material change in the basis of computing the net income of life insurance companies. Since underwriting income, that is, premium receipts were not to be included in gross income under the Revenue Act of 1921, the deduction of the mortality content in the net or mathematical premium could no longer be permitted, the deduction of the net addition to the reserves required by law was therefore eliminated. There still remained, however, the interest content in the net or mathematical premium, since a portion of the interest, dividends, and rents received by a life insurance company must be used each year in maintaining the legal reserve; that is, adding to it on the basis of a certain interest rate varying from 3 to 4 per cent., according to the requirements of the statutes of the several states. Since gross income includes all interest, dividends, and rent received, it was proper to permit a deduction of that portion of the same included in the gross income which was required to mature the policy of a life risk. Congress thereupon provided for the deduction of 4 per centum of the mean of the reserve, the highest per cent. required to be credited thereto by any of the state laws, and based the deduction upon the mean of the reserve held at the beginning and end of the taxable year. The deduction permitted by section 245 (a) (2) was therefore consistent with the deduction permitted by prior revenue acts, namely, the net addition to reserves required by law.

Congress has not, in any of the revenue acts, defined the meaning of the term "reserve required by law." It had, however, knowledge of the meaning of that term as defined by the courts when it enacted the Revenue Act of 1921, and had it intended to change the meaning of the term it would have done so in the 1921 and later acts. Section 245 (a) (2) of the 1921 act was re-enacted by the Revenue Act of 1924, 43 Stat. 253, 289 (26 USCA § 1004 (a) (2); the Revenue Act of 1926, 44 Stat. 9, 47 (26 USCA § 1004 (a) (2); and by section 203 of the Revenue Act of 1928, 45 Stat. 791, 843 (26 USCA §

2203). By this action it would seem that Congress accepted the definition of that term as established by repeated court decisions. National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496.

In Old Line Insurance Co. v. Commissioner of Internal Revenue, 13 B. T. A. 758, the United States Board of Tax Appeals held that a contingency reserve for anticipated excessive mortality losses and possible losses in reserve invested, which was maintained by petitioner in addition to a reserve of the net value of the outstanding policies, is not a reserve required by law within the meaning of section 245 (a) (2) of the Revenue Act of 1921. And in Standard Life Insurance Co. of America v. Commissioner of Internal Revenue, 13 B. T. A. 13, the board held, in considering the Revenue Acts of 1921 and 1924, that the term "reserve funds" has the same meaning under all acts. In Midland Mutual Life Insurance Co. v. Commissioner of Internal Revenue, 19 B. T. A. 765, the Board held that reserves maintained by a mutual life insurance company for 1922 and subsequent years on account of dividends declared upon participating policies and left with the company to accumulate are not reserve funds required by law within the meaning of the revenue acts.

From the foregoing, we are of opinion that the technical insurance reserve of a life insurance company, under the 1921 and subsequent acts, is the same reserve as that under the 1918 and prior revenue acts. The items claimed by plaintiff as a part of its reserve funds required by law represented claims that had accrued under plaintiff's policy contracts on account of the very contingencies insured against. They constituted pure liabilities, and, as stated by this court in Minnesota Mutual Life Insurance Co. v. United States, supra, "the statutory requirement as to a reserve against the liability is, it seems to us, no more than a wholesome provision that the stated annual financial condition of the company in this respect shall be maintained."

We think the Commissioner properly rejected the claim for refund. The petition must be dismissed, and it is so ordered.