CONTINENTAL ASSUR. CO., Inc., v.
UNITED STATES.
No. 42523.

Court of Claims.
Oct. 15, 1934.

473

Jay C. Halls, of Chicago, Ill. (Albert
L. Hopkins, Stephen M. Reynolds, and Hop-
kins, Sutter, Halls & De Wolfe, all of Chi-
cago, Ill., on the brief), for plaintiff.

Guy Patten and Edward H. Horton, both
of Washington, D. C., and Frank J. Wide-
man, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and
GREEN, LITTLETON, WILLIAMS, and
WHALEY, Judges.

LITTLETON, Judge.

The question presented in this case is
whether the amounts of $107,620 and $127,-
407.73 held by plaintiff at the beginning and
end, respectively, of the year 1927 to meet
its liability to holders of matured unsurren-
dered and unpaid coupons attached to cer-

tain twenty-payment life policies, styled "special-coupon accumulative additions policy" and ordinary life policies, styled "acceleration-coupon options policy," constituted "reserve funds required by law" within the meaning of section 245 (a) (2) of the Revenue Act of 1926 (26 USCA § 1004 (a) (2).

The amount of each coupon was subject upon the date it matured and became payable by plaintiff to certain options by the holder thereof, as hereinbefore set forth in the findings, one of the privileges being that the matured coupons with interest could be withdrawn in cash without surrender of the policy. No portion of the amount of the matured coupons involved had been withdrawn in cash or otherwise disposed of under other options but it had been allowed by the holders thereof to remain with the company at interest.

Plaintiff contends that the reserve maintained by it to equal the aggregate face amount of all outstanding matured unsurrendered and unpaid coupons was a reserve required by law within the meaning of the taxing statute; that the amount so set aside represented amounts necessary to meet policy obligations, and even though the obligation was represented by a coupon attached to the policy it was just as much a part of the policy as if set out in the body thereof; and that defendant erred in refusing to allow a deduction of $4,700.56, being 4 per cent. of the mean of the amounts held to pay the amount of such matured coupons in the event payment was demanded.

On the other hand, the defendant contends: (1) That the only reserves recognized for purposes of federal taxation are those set up out of premiums when paid to meet contingent obligations of life insurance, computed, in the case at bar, on the American Experience Table of Mortality, plus interest at $3\frac{1}{2}$ per cent. per annum, and held by the company to meet future unaccrued and contingent obligations on its outstanding policies of life insurance; and (2) that the coupon reserves here in issue were not reserves held against future unaccrued and contingent liabilities but ordinary solvency reserves held to cover its fixed liabilities at January 1 and December 31, 1927, to the holders of matured unsurrendered and unpaid coupons which had become absolute and unconditional liabilities of the company.

We are of opinion that the defendant is correct in its contentions and were it not for the decisions hereinafter discussed rendered by the United States Board of Tax Appeals in Standard Life Insurance Co. of America v. Commissioner of Internal Revenue, 13 B. T. A. 13, affirmed in Commissioner of Internal Revenue v. Standard Life Ins. Co. of America (C. C. A.) 47 F.(2d) 218, and followed by the Board of Tax Appeals and the Circuit Courts in subsequent decisions, involving the same question, we would be content to rest our decision approving the action of the Commissioner of Internal Revenue in this case upon McCoach v. Insurance Company of North America, 244 U. S. 585, 37 S. Ct. 709, 61 L. Ed. 1333; Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297, as modified and explained in United States v. Boston Insurance Company, 269 U. S. 197, 46 S. Ct. 97, 70 L. Ed. 232; New York Life Insurance Company v. Edwards, 271 U. S. 109, 46 S. Ct. 436, 70 L. Ed. 859; Minnesota Mutual Life Insurance Co. v. United States, 66 Ct. Cl. 481; Massachusetts Mutual Life Insurance Co. v. United States, 56 F.(2d) 897, 901, 74 Ct. Cl. 162, and Midland Mutual Life Insurance Co. v. Commissioner of Internal Revenue, 19 B. T. A. 765. Properly interpreted we think these last-mentioned cases establish the principle that the term "reserve" has a special meaning in the law of insurance and means a sum of money variously computed or estimated which, with accretions from interest, is set aside, "reserved," as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. Also, that reserves for matured accrued claims which are payable in cash or subject to certain options cannot be included in the "reserve required by law" within the meaning of the taxing act. In the case of life-insurance companies, the computation of the reserve, in connection with which the deduction is allowable, is to be made upon the basis of an experience table of mortality and an assumed rate of interest, the calculation of which is an actuarial function, and the reserve intended by the taxing act as a deduction is the amount set aside from premiums and built up by interest accretions to meet existing unmatured insurance, whether fire, marine, or life insurance. This principle excludes, as reserves within the meaning of the federal taxing act, amounts held on account of matured obligations and also amounts held by insurance companies which do not represent insurance in existence during the taxable year for the reason that, in the one case, the reserve has served its purpose and the

amounts held have become pure liabilities, and, in the other, there being no insurance as yet in existence, there can be no reserve of the character required by the foregoing rules. In both instances the amounts held represent matured obligations payable or pure liabilities. Any reserves for such matured obligations therefore are solvency reserves required to be maintained as a condition precedent to the doing of business and do not enter into the reserve required to be maintained for the purpose of maturing the insurance risk when the contingency forming the basis of insurance occurs.

The matured unsurrendered and unpaid coupons involved herein and attached to certain of the plaintiff's policies of life insurance had by lapse of time and payment of the required premiums become unconditionally due and payable in cash with interest on demand to their respective holders. The amounts of these coupons were subject to certain options under which the holders could use them in the payment of premiums on the policies to which they were attached or in the purchase of additional paid-up insurance. Such matured, unsurrendered, and unpaid coupons had, however, been left by the holders with the company to accumulate at compound interest at the rate of $3\frac{1}{2}$ per cent. per annum, thereby creating a fund to the credit of the insured which might be applied by him to the payment of premiums or withdrawn in cash at any time. None of the extended options had been exercised. For this reason the company could not and did not carry the amounts reserved to take care of these matured unsurrendered coupons in its life reserves for the face amount of the policies in the annual statement of the above-named company above line seven of the convention edition entitled "net reserve (paid-for basis)," which life reserves were entirely separate and apart from the matured coupon liability reserve. See findings 10 and 11.

It is well established, we think, that not every reserve required by state statute or state officer is a "reserve required by law" within the meaning of the Federal statutes, and it will be helpful, therefore, to examine into the nature and character of the reserve made the subject of the reserve deduction granted by Congress as distinguished from the matured coupon reserves here in question and similar solvency reserves to provide for the payment or discharge, when payment is demanded, of the matured obligations constituting pure liabilities. Such consideration will require a discussion of the underlying characteristics of life insurance reserves in the light of decisions upon the subject. None of the revenue acts has defined the meaning of the term "reserve" required by the law, but the meaning of this term as employed by Congress in the taxing acts has been considered in a number of decided cases involving either fire, marine, casualty, or life insurance companies, under the revenue acts in force prior and subsequent to the Revenue Act of 1921 (42 Stat. 227). The act of 1921 was the statute in which a material change was made in the provisions relating to the taxation of insurance companies. See Massachusetts Mutual Life Ins. Co. v. United States, supra. In McCoach v. Insurance Co. of North America, supra, the question was whether the incurred but unpaid claims of a fire-insurance company were "reserves" required by law. In denying the company's claim that such reserves came within the provision of the taxing statute, the court, at page 589 of 244 U. S., 37 S. Ct. 709, 711, said: "Conceding full effect to this [that loss claim reserves were required to be maintained by the State insurance commissioner], it still does not answer the question whether the amounts required to be held against unpaid losses, in the case of fire and marine insurance companies, are held as 'reserves,' within the meaning of the Pennsylvania law or of the act of Congress, however they may be designated upon the official forms. As already appears, the Pennsylvania act specifically requires debts and claims of all kinds to be included in the statement of liabilities, and treats them as something distinct from reserves. The object is to exercise abundant caution to maintain the companies in a secure financial position. The act of Congress, on the other hand, deals with reserves not particularly in their bearing upon the solvency of the company, but as they aid in determining what part of the gross income ought to be treated as net income for purposes of taxation. There is a specific provision for deducting 'all losses actually sustained within the year and not compensated by insurance or otherwise.' And this is a sufficient indication that losses in immediate contemplation, but not as yet actually sustained, were not intended to be treated as part of the reserve funds; that term rather having reference to the funds ordinarily held as against the contingent liability on outstanding policies. In our opinion the reserve against unpaid losses is not 'required by law,' in Pennsylvania, within the meaning of the act of Congress."

This shows clearly we think that the "reserve" intended by the federal statute represents funds held on account of insurance in existence and unmatured during the taxable year as distinguished from funds held for matured policy obligations. We are unable to find where the court has departed from the principle announced in the above-named case which was decided in 1917. The Maryland Casualty Company Case, supra, decided in 1920, involved the unpaid policy claim reserves of a casualty insurance company and the court held, at page 350 of 251 U. S., 40 S. Ct. 155, 158, that: "The term 'reserve' or 'reserves' has a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside—'reserved'—as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment." In 1925 the Supreme Court decided the case United States v. Boston Insurance Company, supra, which arose under the Revenue Act of 1916 and presented the same question as that presented and decided in McCoach v. Insurance Co. of North America, supra. In this case the court disapproved in part what had been stated in the Maryland Casualty Company Case, supra, the part disapproved being the words "and claims accrued, but contingent and indefinite as to amount or time of payment." In disapproving this portion of the Maryland Casualty Company Case the court in United States v. Boston Insurance Co., supra, said at page 203 of 269 U. S., 46 S. Ct. 97, 99: "Upon a re-examination of the record [in the Maryland Casualty Company's Case], it becomes plain that we misapprehended the opinion and ruling of the lower court; also that the reason advanced to support our conclusion is insufficient. The Commissioner of Internal Revenue had refused to allow the deduction claimed because of addition to the reserve for unpaid loss claims (except liability claims —the net addition to which reserve was allowed). * * * The finding that the insurance department of Pennsylvania pursuant to statute, had at all times since and including 1909 required claimant to keep on hand, as a condition of doing business in the state, 'assets as reserves sufficient to cover outstanding losses,' without more, was not sufficient to justify the deduction of the reserve as one required by law to be maintained, within the meaning of the act of Congress. This had been announced by McCoach v. Insurance Co." In the same opinion the court approved what it had previously held in McCoach v. Insurance Co. of North America, supra, and said at page 202 of 269 U. S., 46 S. Ct. 97, 98: "It follows from McCoach v. Insurance Co. that the permitted deductions specified by section 12, Act 1916, do not necessarily include anything which may be denominated 'reserve fund' by state statute or officer. We there distinctly ruled that the 'reserve fund' of the federal act did not include something held by a fire and marine insurance company to cover accrued, but unsettled, claims for losses. We adhere to and reaffirm that doctrine. How far it must be modified, if at all, in respect of insurance companies which issue casualty, surety, or liability policies, or similar obligations, is not now before us."

The foregoing decisions involved fire, marine, or casualty insurance companies, and the question later arose as to whether or not these decisions applied to life-insurance companies. The question was answered in New York Life Insurance Co. v. Edwards, supra, in which the court extended the doctrine in the McCoach and Boston Insurance Cases to life insurance companies. The facts in that case showed that a number of policyholders of the New York Life Company died during the calendar year but that their deaths were not reported before it terminated. The Superintendent of Insurance of the State of New York required the company to set aside a special fund to meet these matured but unreported claims and the company claimed that this was an addition to the reserve fund required by law. The court said, at page 119 of 271 U. S., 46 S. Ct. 436, 438: "We think this claim was properly rejected by the commissioner, although the courts below held otherwise. McCoach v. Insurance Co. of North America, supra, and United States v. Boston Insurance Co., supra, pointed out that 'the net addition, if any, required by law to be made within the year to reserve funds,' does not necessarily include whatever a state official may so designate; that 'reserve funds' has a technical meaning. It is unnecessary now to amplify what was there said. The item under consideration represented a liability and not something reserved from premiums to meet policy obligations at maturity." It is our opinion that the court by the use of the term "policy obligations" had reference to life insurance policy obligations, inasmuch as "the net addition required by law to be made within the year to

reserve funds," applies only to the mortality obligations arising under the policy of life insurance at maturity. The controversy in the case at bar arises from the fact that the plaintiff is insisting that the words "policy obligations" refer not alone to obligations calculated upon the basis of the mortality tables selected, together with the rate of interest assumed, but that these words include any obligation assumed by the company under its contracts. But we cannot agree with this position.

In 1928 this court decided the case of Minnesota Mutual Life Insurance Co. v. United States, supra, involving the question whether certain deferred dividend reserves which plaintiff was required to maintain under the provisions of section 3497, General Statutes of Minnesota 1913, were "reserves" required by law within the meaning of the federal statutes. This court rejected the contention of the company that such dividend reserves were reserve funds required by law within the meaning of the taxing act and pointed out that in the matter of federal taxation Congress was dealing with the isolated subject of insurance and in employing the term "reserve" the intention was to attach to it the special and technical meaning it has in the law of insurance, and that "the statutory requirement as to a reserve against the liability is, it seems to us, no more than a wholesome provision that the stated annual financial condition of the company in this respect shall be maintained."

In 1932 this court decided Massachusetts Mutual Life Insurance Co. v. United States, supra, which arose under the Revenue Act of 1921 and involved the claim of a life insurance company that the reserve required by law, in connection with which a deduction was allowed by the taxing act, included a reserve for dividends declared and left with the company to accumulate at interest and accrued interest thereon; dividends or other profits due policyholders, including those contingent upon payment of outstanding and deferred premiums; and dividends declared on or apportioned to annual-dividend policies payable to policyholders to and including May, 1923 and 1924, whether contingent upon renewal payments or otherwise. We held that the reserve funds claimed by plaintiff represented claims that had accrued under its policy contracts and that as they represented pure liabilities the amounts held on account thereof could not be included in the reserve permitted under the taxing act. The same considerations that controlled the decision in that case apply with equal force to

the case at bar. The amounts against which the reserves were held were subject to the same or substantially the same options as the matured, unsurrendered, and unpaid coupons involved in the case at bar. None of the options had been exercised, and the amounts due the policyholders had been left with the company to accumulate at interest. In the Massachusetts Mutual Life Insurance Company Case, supra, we discussed the method by which the table rate of premiums provided for in life insurance on the level-premium plan is calculated and the nature of the reserve required to be set apart to meet or mature the company's contract obligation to the insured on his death or upon the surrender or cancellation of his policy, and pointed out that amounts set aside to take care of matured obligations which had become payable, but with respect to which payment had not been demanded within the taxable year, were not a part of the technical insurance reserve of a life-insurance company as contemplated in the federal taxing acts. We also discussed the special plan under which insurance companies were taxed under the various acts, the change in that plan made in the Revenue Act of 1921, and the reasons therefor. With reference to the nature of the deduction of 4 per cent. of the mean of the reserve funds required by law, allowed in the Revenue Act of 1921, we said: "Since underwriting income, that is, premium receipts were not to be included in gross income under the Revenue Act of 1921, the deduction of the mortality content in the net or mathematical premium could no longer be permitted, the deduction of the net addition to the reserves required by law was therefore eliminated. There still remained, however, the interest content in the net or mathematical premium, since a portion of the interest, dividends, and rents received by a life insurance company must be used each year in maintaining the legal reserve; that is, adding to it on the basis of a certain interest rate varying from 3 to 4 per cent., according to the requirements of the statutes of the several states. Since gross income includes all interest, dividends, and rent received, it was proper to permit a deduction of that portion of the same included in the gross income which was required to mature the policy of a life risk. Congress thereupon provided for the deduction of 4 per centum of the mean of the reserve, the highest per cent. required to be credited thereto by any of the state laws, and based the deduction upon the mean of the reserve held at the beginning and end of the taxable year.

The deduction permitted by section 245 (a) (2) was therefore consistent with the deduction permitted by prior revenue acts, namely, the net addition to reserves required by law."

Whether the amounts held by plaintiff to meet its liabilities to holders of matured unpaid coupons at January 1 and December 31, 1927, come within the term "reserves" as that term is used in the taxing acts depends, we think, upon whether the usage to which these coupons may be put involve life insurance before they have been used for that purpose. It is agreed that the amounts of the matured unpaid coupons had been left with plaintiff to accumulate at compound interest and that these amounts had not been used to pay insurance premiums or to purchase additional insurance, otherwise the amounts represented by such matured unpaid coupons would not be included in the amounts here in controversy. We are not therefore concerned in this case with either unmatured coupons or surrendered coupons but only with matured obligations of the company which had become unconditionally due and payable on demand with interest and constituted absolute liabilities in the year 1927. Although plaintiff was required by the Superintendent of Insurance of the State of Illinois under the law of that state to maintain assets sufficient in amount to meet any election or demand the holders of these matured obligations might have made during 1927, these amounts had no relation to the reserve required by law to mature or liquidate the amount of future unaccrued and contingent claims under the policy and do not, therefore, enter into the deductions authorized by the Revenue Act of 1926. The Board of Tax Appeals in Standard Life Insurance Co. of America v. Commissioner of Internal Revenue, supra, affirmed (C. C. A.) 47 F.(2d) 218, held that "a life insurance company has an absolute liability in respect of every policy so long as premiums are paid thereon" and that such "liability is not contingent" but with this we cannot entirely agree. It is only upon the maturity of a policy that a policyholder becomes a creditor of the company. Some policies, after they have been in effect for a year or more, have a cash surrender value, but the amount thereof and the time of payment are contingent until some uncertain event occurs or some option is exercised. The face amount of the policy, for which the policyholder is insured, is likewise contingent. It is because a life insurance company's liability is contingent and not absolute on its life contracts that reserves are required. While death is certain, the uncertain and contingent event is when the individual will die. For this reason mortality tables have been constructed upon the basis of which life insurance reserves have been computed with such accuracy that, when improved with interest at the assumed rate, every death claim of the members of the group will be paid in full when, sooner or later, death comes to the several members of the group. If the liability of an insurance company were absolute to the individual policyholders, there would be no need for the use of mortality tables and the business of life insurance would be merely a commercial lending and saving transaction to meet absolute and known liabilities. The business, however, is based upon the law of averages for the group insured and for this reason the liability on the policy of life insurance prior to its maturity is not absolute but contingent. Therefore reserves, actuarially determined, must be set up out of premiums when paid to meet future unaccrued and contingent policy obligations at maturity. It was the "net value reserve," "something reserved from premiums to meet policy obligations at maturity" to which the Supreme Court referred in New York Life Ins. Co. v. Edwards, supra, and the court held that the amounts there claimed were not reserves required by law within the meaning of the federal statutes because the liability of the company in that case was an accrued and absolute liability.

In view of our interpretation of the decisions in the cases cited and for the reasons hereinbefore given, we are unable to concur in the decisions in Commissioner v. Standard Life Ins. Co., supra, affirmed (C. C. A.) 47 F.(2d) 218; Commissioner v. Western Union Life Ins. Co. (unreported in B. T. A.) affirmed (C. C. A.) 61 F.(2d) 207; Commissioner v. Inter-Mountain Life Insurance Co. (unreported in B. T. A.) affirmed (C. C. A.) 71 F.(2d) 962, and other cases involving matured unsurrendered and unpaid coupons, in which the Board of Tax Appeals has followed the decisions in the cases mentioned.

We are unable to find any distinction between a reserve for declared dividends payable, reserves for which the Board held in Midland Mutual Life Ins. Co. v. Commissioner, 19 B. T. A. 765, 767, were not reserves required by law within the meaning of the Federal statute, and matured coupons payable, which were held by the Board of Tax Appeals and approved by the circuit courts to be within the reserves required by law. The options available to the insured

with respect to dividends declared and coupons matured are in substance identical. In our opinion the principle announced in Midland Mutual Life Ins. Co. v. Commissioner, supra, and followed by this court in Massachusetts Mutual Life Ins. Co. v. United States, supra, was correct and conflicts with the earlier decision of the Board in Standard Life Ins. Co. v. Commissioner, supra. The extended options with respect to dividends declared and credited to the policyholder and interest thereon were that such amounts might be (1) withdrawn in cash or applied toward the payment of any premium or premiums; (2) applied to the purchase of paid-up participating life-insurance additions to the policy payable at the death of the insured; or (3) left to accumulate to the credit of the policy with interest at not less than 3½ per cent. per annum and payable at the death of the insured, but withdrawable at any time; and the options with reference to the matured coupons here involved and interest thereon were that the amounts thereof might be (1) withdrawn in cash (finding 13), or used by the insured, (2) to reduce the succeeding year's premium; (3) to purchase paid-up additions to the face of the policy; (4) to reduce the number of premium payments; or (5) left with the company to accumulate interest at 3½ per cent.

In view of these options, we find no valid distinction between amounts held for dividends declared and accrued interest thereon in the case of a mutual company and amounts held for matured coupons and accrued interest thereon in the case of a stock company; both are absolute accrued liabilities. The insurance company, stock or mutual, is bound in either case to hold assets equal in amount to those accrued liabilities which will enable it to meet its contract obligations in the event of the exercise of the option rights by the policyholder. If the amounts held in one case constitute a part of the reserve required by law, it would seem to follow that the same is true with respect to the other. The answer, however, in either case we think, is that so-called "reserves for dividends declared and coupons matured" represent ordinary "solvency" reserves held to meet accrued liabilities and as such they do not constitute reserves required by law within the meaning of the federal statutes.

The financial stability of life insurance companies is a matter of great importance to many million policyholders and their beneficiaries, and this depends in great measure upon the care exercised in various states in requiring that the companies doing business therein have assets and maintain reserves, contingent or technical, covering life insurance risk and solvency reserves to protect the insured who maintains his contract by proper payment of premiums. But in the income-tax statutes Congress was not legislating with reference to solvency matters or accrued and unpaid claims or refunds of insurance companies; instead it was dealing with the determination of taxable income and the deductions from income in determining the amount subject to the income tax. For this reason matured or accrued claims, so long as they remain payable upon demand, have no place in the reserve contemplated in the taxing acts.

At all times prior to the decision of the Maryland Casualty Co. v. United States, supra, in 1920 and at all times subsequent to the decision in United States v. Boston Insurance Co., supra, the Treasury Department has consistently ruled in published decisions and regulations that amounts held for accrued claims or absolute liabilities were not a part of the reserve fund required by law within the meaning of that term as used in any federal taxing statute. Thus, for eighteen years no change was made in the law relating to deductions from income computed with reference to the amount of permitted reserves. Such long-continued construction should be given weight in the determination of the nature and amount of the reserves allowable under the section of the statute relating to deductions by insurance companies. United States v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; Brewster v. Gage, 280 U. S. 327, 336, 50 S. Ct. 115, 74 L. Ed. 457; Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. 397; Murphy Oil Co. v. Burnet, 287 U. S. 299, 53 S. Ct. 161, 77 L. Ed. 318; and United States v. Dakota-Montana Oil Co., 288 U. S. 459, 466, 467, 53 S. Ct. 435, 77 L. Ed. 893.

After a careful study of the nature and purpose of reserves maintained by life insurance companies in the light of all the decisions which have been rendered upon the subject and the plan of taxation of such companies as provided in the federal taxing acts, we conclude: (1) That accrued liabilities are not the subject of the "reserve fund" deductions granted by Congress in any of the revenue acts; (2) that the "reserve" contemplated in the Federal statutes is "that fund which when added to the present value of future net premiums is equal to the present value of future death claims"; that is, the

mathematical equivalent of the obligation incurred by the company to pay the sum insured at the death of the policyholder or upon the surrender and cancelation of the policy; (3) that the "reserve" contemplated in the federal statutes is calculated upon the basis of a selected table of mortality plus an assumed rate of interest; and that reserves not so calculated, whether required by state law or by state officer, are not "reserve funds required by law" within the meaning of the federal statutes; and (4) that the "reserve fund" required by law within the meaning of the federal statutes does not include "solvency" reserves required to be maintained by state law or a state officer to keep the company in sound financial condition.

The petition herein must, therefore, be dismissed. It is so ordered.