NEW WORLD LIFE INS. CO. v. UNITED STATES.

No. 43549.

Court of Claims.

March 6, 1939.

446

Walter E. Barton, of Washington, D. C., for plaintiff.

Guy Patten, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Fred K. Dyar and Robert Anderson, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WHALEY, and WILLIAMS, Judges.

LITTLETON, Judge.

The first question involves a construction of section 203(a) (5), Revenue Act of 1928, 26 U.S.C.A. § 203(a) (5), which relates to the deduction allowable to a life insurance company in respect of investment expenses. This section is in the following language: "In the case of a life insurance company the term 'net income' means the gross income less * * * investment expenses paid during the taxable year: *Provided,* That if any general expenses are in part assigned to or included in the investment expenses, the total deduction under this paragraph shall not exceed one-fourth of 1 per centum of the book value of the mean of the invested assets held at the beginning and end of the taxable year."

The gross income of a life insurance company consists only of "the gross amount of income received during the taxable year from interest, dividends and rents," that is, investment income. Six specific deductions are allowed, among which is the deduction here involved. Two additional deductions are conditionally allowed under sec. 203 (b). A specific exemption is provided. A life insurance company is not taxable upon its general income from premium receipts or on gain or profit from sale of property.

As shown by the findings, the plaintiff, by a resolution adopted in 1929, undertook to apportion the salaries paid to its general officers and certain general employees as between the underwriting and the investment departments of its business and to include as a direct investment expense an amount ranging from 25 per centum to 80 per centum of such salaries. The amounts so apportioned to and included in the investment expenses, together with all actual and direct investment expenses, were claimed as deductions from gross income for 1929 and subsequent years. The salaries of such officers and cashiers were for services performed and expected to be performed; and such services related to all departments of plaintiff's business, that is, to both the investment and underwriting departments. The percentages of such salaries which the resolution directed be charged to the investment department represented estimates arrived at by such officers, and in the case of the cashiers by estimates arrived at by the supervising officers in charge of such cashiers. The direct investment expenses, that is, the actual expenses about which there is no controversy, which were wholly incurred and paid in the investment department, exceeded an amount computed upon the basis of one-fourth of 1 per centum of the book value of the mean of plaintiff's invested assets.

The case of Sun Life Insurance Company of America v. United States, 12 F. Supp. 450, 81 Ct.Cl. 892, involved a deduction under section 203(a) (5). The question of the proper construction of this section and the extent of the deduction for investment expenses which a life insurance company may take thereunder has been reargued in this case. In the prior case of Sun Life Insurance Company, supra, the history, purpose, and meaning of the section in its relation to the special plan for the taxation of life insurance companies and the relation of the section to the business practices of such companies under the statutes of many states concerning investment expenses were not fully briefed and argued. In view of the facts here disclosed and also in view of important considerations bearing upon the proper interpretation of the section not heretofore considered and discussed by the court, which are now pressed upon our attention with an earnestness and fullness of argument which they have not heretofore received, we deem the occasion an appropriate one to re-examine the whole subject.

In its returns for each of the years involved, plaintiff deducted from gross income as investment expenses all amounts charged in the investment department representing direct and actual investment expenses wholly incurred and paid in that department, and, in addition, the amounts on account of officers' and cashiers' salaries apportioned to and included in investment expenses in accordance with the resolution. The Commissioner of Internal Revenue determined and allowed the expenses directly and entirely incurred and paid in the in-

vestment department, and, inasmuch as these actual investment expenses exceeded one-fourth of 1 per centum of the mean of the book value of plaintiff's invested assets at the beginning and end of each taxable year, he excluded and refused to allow as a part of the deduction that part of the salaries of general officers and cashiers assigned to and included in investment expenses.

Plaintiff contends that this action was contrary to the provisions of section 203 (a) (5) supra. It insists that when a taxpayer makes a determination or when it can submit evidence to show that a certain portion of the time of general officers or employees and a certain percentage of the salaries paid to them for services rendered in all departments of the business reasonably relate to services performed and expenses incurred in the maintenance and operation of the investment department of the business, such percentage of the total salaries paid may, under the section mentioned, be included in investment expenses and deducted without limitation, from investment income for the reason that in such circumstances the portion so assigned to and included in the investment department becomes a direct and actual investment expense.

Plaintiff's position, in substance, is that the term "general expenses" as used in the statute refer specifically and only to those expenses which are *not* susceptible of division and allocation to the investment and underwriting departments and are incurred for and in behalf of both. We think this position does not take into consideration the fundamental distinction which exists in fact and is observed in the taxing statutes between general expenses and investment expenses. With respect to the former, a part thereof may be susceptible of reasonable ascertainment and fairly chargeable against investment income and this was recognized and permitted by Congress, as shown by the Committee Reports, to the extent of one-fourth of 1 per centum of the book value of the mean of the invested assets. But, with respect to the latter, no question of division or allocation exists and Congress permitted them to be deducted without limitation. The first part of the section allowing the deduction of *investment expenses* paid and the proviso excluding all *general expenses,* in excess of a specified amount are to be read and construed together. In view of facts and circumstances which now appear, we think the inclusion of the first without limit and the exclusion of the second in excess of the specified limitation cannot be regarded the same as the inclusion without limit of all of one and a part of the other. And we think also it is of no controlling importance that the officers of the corporation in their judgment make an allocation of general salaries between the Investment and Underwriting Departments. In the circumstances an interpretation which would permit this to be done would require an unauthorized interpolation. The fact that general expenses may be reasonably susceptible of apportionment does not take them out of the class of general expenses within the meaning of the proviso. When so apportioned, either before or after they are incurred, the parts assigned are still impressed with the character of the services or matters in respect of which they are incurred.

We are therefore of opinion that the additional deductions here claimed cannot be sustained under the language and intent of section 203(a) (5) when that section is considered in the light of the history and reasons for the adoption in 1921 of the special plan for taxing the limited income of life insurance companies. Prior to the enactment of the Revenue Act of 1921, approved November 23, 1921, 42 Stat. 227, life insurance companies were by definition included within the term "corporation" and were taxable as ordinary corporations, their gross income, including not only their investment income—that is, their income from interest, dividends, and rents—but also their total premium receipts and all other gains and profits from sales of property.[1] This original plan of taxation, through the inclusion of premium receipts and the allowance of all deductions generally allowed corporations and, in addition, policy claims accrued and paid, etc., was generally unsatisfactory and was productive of almost constant administrative controversy and litigation. As a result the life insurance companies, through the Association of Life Insurance Presidents, proposed to Congress a new plan for the taxation of life insurance companies in connection with

[1] Corporation Excise Tax Act of 1909, 36 Stat. 11, 112; Revenue Act of 1913, 38 Stat. 114, 172, 173; Revenue Act of 1916, 39 Stat. 756, 765–768; Revenue Act of 1918, 40 Stat. 1057, 1075–1079.

the consideration by Congress of the Revenue Bill of 1918.[2] In a written document filed with the Ways and Means Committee at the time the Revenue Bill of 1918 was being considered, the Association of Life Insurance Presidents said, among other things: "Although only a minor proportion of the premiums received by the insurance companies constitutes true income, the greater part being the policyholders' contributions toward current losses and to permanent capital, the entire premium income is included in gross income under the Income Tax Law. This departure from principle is, however, rendered innocuous through deductions expressly allowed by the statute." The plan submitted by the insurance companies proposed to place life insurance companies in a special class for the purpose of Federal taxation, and to change the basis of tax theretofore existing so as to include in gross income only the investment income of the companies consisting solely of interest, dividends, and rents, the deductions proposed in connection with this plan being expressly limited to those directly relating to the production of investment income.[3] The House did not adopt the proposed plan in the Revenue Bill of 1918. However, the Senate Finance Committee recommended in the 1918 Revenue Bill the plan proposed, which plan was later adopted and included as law in the Revenue Act of 1921. The amendment proposed by the insurance companies which was adopted and recommended to the Senate by the Finance Committee in the Revenue Bill of 1918, insofar as it related to the deduction from gross income for investment expenses, was as follows: "Section 246. (a) That in the case of an insurance company taxable under section 245 the term 'net income' means the gross income less * * * (4) Investment expenses during the taxable year not exceeding one-fourth of 1 per centum of the mean of the invested assets." In presenting the bill, Senator Simmons, chairman of the Finance Committee, stated that it had been framed after consultation with many representatives of the life insurance companies.[4]

The plan proposed for the taxation of life insurance companies was approved and adopted by the Senate, but was thereafter abandoned in conference.

The above limitation of one-fourth of 1 per centum, which had been proposed by the life insurance companies themselves, on the deduction "for investment expenses" was exactly the limitation which had long been in force and effect in the State of New York, as well as in various other states, under which life insurance companies in making their Annual Statements to the Insurance Departments of the various states had been limited by law to an arbitrary deduction for investment expenses not exceeding one-fourth of 1 per centum of the mean of their invested assets. Section 33 of the Laws of New York, 1906, ch. 326, which added section 97, to Laws 1892, c. 690, provides as follows: "Limitation of expenses. * * * No such corporation [domestic life insurance corporation] shall make or incur any expense or permit any expense to be made or incurred upon its behalf or under any agreement with it, except actual investment expenses (not exceeding one-fourth of 1 per centum of the mean invested assets) * * *."

It will thus be seen that the provision with reference to the deduction for investment expenses in the Revenue Bill of 1918 suggested by the life insurance companies and adopted by the Senate was not new, and that the limitation on expenses which the companies could take against investment income in all circumstances was one-fourth of 1 per centum of the mean of invested assets. There was no provision for the allowance of actual investment expenses beyond that limitation. The percentage specified was then deemed to be adequate by the insurance companies themselves, the State Insurance Departments, and the Senate.

The question of how life insurance companies should be treated for the purpose of Federal taxation again came before Congress in the consideration of the Revenue Bill of 1921. The life insurance companies through the Association of Life Insurance Presidents[5] renewed efforts to obtain a separate classification for purposes of Federal taxation. The Revenue Bill of 1921

[2] Hearings before the Committee on Ways and Means, H.R. 12863, 65th Cong., 2d Sess., on the proposed Revenue Act of 1918, Pt. 1, p. 811.

[3] Senate Rep. 617, 65th Cong., 3rd Sess., p. 9.

[4] Cong.Rec., Vol. 57, Pt. I, p. 254.

[5] At the Annual Meeting of Life Insurance Presidents, December 1920, it was stated in a paper read by Mr. E. E. Rhodes, Vice President of the Mutual Benefit Life Insurance Company, on "Federal Taxation of Life Insurance" that the basis of the income tax was

as introduced in the House contained the plan for taxing life insurance companies which had theretofore been adopted by the Senate in 1918. (H.Rep.No. 350, 67th Cong., 1st Sess., p. 14). When the 1921 Revenue Bill was before the Senate Finance Committee a representative of the life insurance companies stated that "all the life insurance companies are behind that scheme and are satisfied with it." [6] Thereafter, in due course, the Congress after much consideration and consultation with the representatives of the life insurance companies, and with the approval of at least most of the life insurance companies, finally enacted the Revenue Act of 1921, section 245(a) (5), 42 Stat. 262, of which was the same as the provisions of section 203(a) (5) now under consideration. [7]

At this point it should be noted that the provision with respect to the deduction allowed for investment expenses as finally adopted in the 1921 Act is more liberal as to the amount which may be deducted for investment expenses under certain circumstances than was the original provision proposed in connection with the Revenue Bill of 1918, in that life insurance companies are allowed all actual investment expenses, whereas, under state law and the provision proposed by the life insurance companies and adopted by the Senate in connection with the 1918 Revenue Bill, no investment expenses in any circumstances were allowable beyond the limitation of one-fourth of 1 per centum of the mean of the invested assets. But this liberalization was not without limitation and such liberalization applied only in cases where the company did not include any general expenses in its actual investment expenses. In order to control the deduction to be taken against the limited income which was being taxed, and thus avoid uncertainty in respect of the net income of life insurance companies

that it chose to tax, Congress limited the deduction to one-fourth of 1 per centum of the book value of the mean of the invested assets "if any general expenses are assigned to or included in investment expenses." The evident purpose and reason for this more liberal provision with reference to the deduction of actual investment expenses, regardless of amount (but subject to the original limitation of one-fourth of 1 per centum if any expenses of a general character were assigned or included), was due to the fact that some of the newer or smaller life insurance companies (principally the mid-western companies, as shown in the case at bar), where the nature of the companies' investments required field work, invested their funds largely in farm loan mortgages which produced higher rates of interest income and involved also proportionately higher expenses in connection therewith, such as expenses for salaried field representatives for procuring and servicing such loans. The investments of the older and eastern companies were more largely in stocks and bonds which produced a lower interest income and, correspondingly, lower expenses in connection therewith because of such investments being made in a more direct manner. In these circumstances it was known that the actual investment expenses, that is, the expenses directly and entirely incurred in the investment department alone, of the smaller companies might exceed one-fourth of 1 per centum of the book value of the mean of their invested assets, but that in the case of the larger companies, which always hold very large amounts of invested assets, the limitation originally proposed by the life insurance companies would always be sufficiently adequate to cover their actual investment expenses.[8] Experience has shown that this comparison is correct for the reason

---

unsatisfactory both to the companies and to the Government, and that a plan similar to that embodied in the Senate Amendment to the 1918 bill should be adopted. Proceedings of the Fourteenth Annual Meeting, pp. 141, 143–145.

[6] Hearings before the Senate Finance Committee, 67th Cong., 1st Sess., on H.R. 8245, September 1–October 1, 1921, p. 84. See also S.Rep. No. 275, 67th Cong., 1st Sess., p. 20.

[7] See sections 242–245, 1921 Act, for the original plan specially taxing life

insurance companies, which plan, so far as material here, has remained the same in all subsequent revenue statutes.

[8] The Treasury Department in regulations and practice has uniformly permitted deductions without limitation of direct and actual investment expenses and has uniformly held life insurance companies to the limitation of one-fourth of 1 per centum, when, by whatever method or plan employed, any company assigned to or included in its investment expenses any expense of a general nature, such as general officers' salaries, etc.

that the question with reference to the right to apportion a part of the general expenses to investment expenses, in order to obtain a deduction in excess of one-fourth of 1 per centum of the mean of the invested assets, has only arisen in court in two cases, other than the present case, during the seventeen years the provision has been in effect.

In the instant case, plaintiff's direct and actual investment expenses for 1929, which were allowed by the Commissioner of Internal Revenue and about which there is no dispute, amounted to approximately $37,000, whereas one-fourth of 1 per centum of the mean of the book value of plaintiff's invested assets at the beginning and end of that taxable year was only approximately $21,000. For 1930 the Commissioner allowed a deduction of actual investment expenses of $42,000 as against such a limitation of $23,000; for 1931 he allowed a deduction of $41,000 as against a limitation of $24,000, and for 1932 a deduction of $37,000 as against a limitation of $24,000. Plaintiff seeks to augment the deductions allowed by the Commissioner for actual investment expenses wholly incurred in that department by an amount in excess of $17,000 for 1929 on account of the allocation to and inclusion in such investment expenses of a portion of the general officers' and employees' salaries, and of more than $21,000 for 1930; $24,000 for 1931, and $26,000 for 1932. These figures appear to illustrate the reason why Congress deemed it advisable to limit the deduction on account of investment expenses to one-fourth of 1 per centum of the mean of the invested assets when the actual investment expenses wholly incurred and paid in maintaining and operating the investment department did not equal or exceed the limitation. Another reason for denying a deduction of any part of a general expense in excess of the limitation was that general income, such as underwriting income and gains and profits on the sale of assets, was being excluded and exempted from taxation. Inasmuch as only the income from the investment department was being made subject to the tax, it would seem that Congress intended that only the actual investment expenses should be allowed when a deduction in excess of one-fourth of 1 per centum was to be permitted. If this were not true the proviso would seem to

have no purpose and its provisions would be rendered of no value. It is well established that Congress may condition, limit, or deny deductions from gross income in order to arrive at the net income that it chooses to tax. Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 51 S.Ct. 418, 75 L.Ed. 1049; Helvering v. Independent Life Insurance Co., 292 U.S. 371, 54 S.Ct. 758, 78 L.Ed. 1311.

The reason for exempting premium income of a life insurance company from taxation was because the greater portion, that is, the net premiums paid and also the reserve built up and maintained therefrom with interest, really belongs to the policyholders. In the total of each annual premium paid, there is always included an amount which, upon the basis of experience, will be sufficient to pay the expenses of the company. Finding 22. New York Life Insurance Co. v. Edwards, 2 Cir., 8 F.2d 851, 852, 853. In that case the court said: " * * * But the net or mathematical premium is not the full amount each member must pay into a going concern, because it contains no provision for expense of management and unforeseen contingencies, such as excess mortality, diminished interest, investment losses, increased taxation, and the like. Therefore, to provide for these, there is added to the net or mathematical premium a sum technically called 'loading.' The net or mathematical premium plus the loading constitutes the company's table rate of premium or level premium, and is the estimated sum named in the policy as premium to be paid in advance and adjusted to cost when cost is known, and is the maximum sum which the company can ever require the insured to pay."

Inasmuch, therefore, as premium income was not being taxed and the untaxed premiums contained amounts for payment of the company's expenses, including all its general expenses, the Congress deemed it necessary to make specific provision as to the maximum deduction allowable against the taxable investment income so as to prevent the apportionment and the inclusion of the general expenses in this deduction. When investment expenses wholly incurred in that department do not equal or exceed the limitation specified, the amount of the deduction is entirely arbitrary; however, as stated in the re

ports of the Congressional Committees,[9] it was considered that adequate provision had been made for "suitable deductions for expenses fairly chargeable against such investment income."

It is well known, and is admitted in this case, that the expenses of a life insurance company generally fall into three classes, to-wit, underwriting expenses, which are those expenses directly relating to and wholly incurred in that department; investment expenses, which are expenses directly relating to and entirely incurred in the maintenance and operation of the investment department; and general expenses, which include, and can only include, all expenses which are not definitely and entirely either investment or underwriting expenses. The last-mentioned class constitutes the only class of expenses to which the proviso of section 203(a) (5) could relate. The additional deductions on account of salaries of general officers and employees claimed in this case are a part of this class of expenses as they relate both to the investment and the underwriting departments. The taxpayer in this and other cases sought to include a portion thereof in the deduction for actual expenses in excess of the limitation of one-fourth of 1 per centum by submitting evidence to show that the services and matters for which the expenses were paid had some relation to the investment department and that an apportionment and allocation of a part of such expenses could be made to the investment department on the basis of a reasonable value for such services or other matters to the investment department. Such apportionments and allocations involve approximations, estimates, or guesses which were a feature of administration which, it appears, Congress desired by the proviso to avoid.

In connection with plaintiff's contention that the term "investment expenses" means, and was intended to mean, any expense of a general nature which might be susceptible of reasonable apportionment and allocation as between the underwriting department and the investment department of the business, reference may be made to the discussion of this provision when it was before the Senate

Finance Committee.[10] At that time Dr. Adams, who was the representative of the Treasury Department, in discussing the section here under consideration with the committee, pointed out that the purpose of this section relating to deductions for investment expenses with the limitation mentioned was to permit those life insurance companies which "very vigorously and exactly allocate or set aside their investment expenses" to deduct such investment expenses and that companies which did not keep their investment expenses accurately and exactly segregated from all other expenses would not be permitted to take a deduction in excess of one-fourth of 1 per centum of the book value of the mean of the invested assets. He was questioned by the chairman of the committee concerning the limitation of one-fourth of 1 per centum, to which he replied that such limitation was a check then imposed upon life insurance companies by law; that "they are quite habituated to it and the practice has shown that it apparently is also quite accurate. If they can allocate and say absolutely just what their investment expenses have been, they are permitted to take them. If they do not go to that trouble, they are not permitted to take more than one-fourth of 1 per centum of the book value of the mean of the invested assets." This explanation when considered in the light of the language of the section shows that the Treasury Department was placing upon the section a construction which would permit a taxpayer to deduct *more* than one-fourth of 1 per centum of the book value of the mean of the invested assets *only* when the taxpayer accurately allocated and could say *absolutely* just what its actual investment expenses had been, and that if such taxpayer did not accurately segregate or allocate its actual investment expenses, that is, those expenses relating directly and entirely to the investment department, it could not have a deduction greater than one-fourth of 1 per centum. In view of the facts and circumstances disclosed by this record, we think this is the correct interpretation of the section. To allocate and say absolutely just what their investment expenses have been precludes the idea (in view of

9 H.Rep. No. 350, 67th Cong., 1st Sess., p. 14; Senate Rep. No. 275, 67th Cong., 1st Sess., p. 20.

10 Hearings before the Senate Committee on Finance, 67th Congress, 1st Sess., on the Revenue Bill of 1921. H.Rep. 8245, pp. 89, 90.

the language of the proviso) of a division of general expenses and the assignment or inclusion of a portion thereof as an "investment expense." If expenses, such as salaries of general officers and employees, which are not entirely incurred and paid in the maintenance and operation of the investment department, may be divided and assigned or allocated in part to the investment department, there would no longer be any "general expense" to which the proviso could apply for substantially all expenses of the company would by that method of division and assignment become either a direct investment expense or a direct underwriting expense, and the sums assigned to and included in the investment department deductible without any limitation whatever.[11] The proviso would then be rendered of little, if any effect.

The proviso of the section under consideration seems further to have contemplated that in some cases the actual investment expenses would not equal one-fourth of 1 per centum of the mean of invested assets and that certain general expenses of the insurance company might, with some degree of reasonableness, be said to have some direct relationship to the investment department and also to be reasonably susceptible of division and assignment in part to the different departments of the business. The proviso was therefore so worded as to make it plain that while this was not being prohibited from a bookkeeping or business standpoint the deduction allowable would be limited to the amount specified if it should be found that the actual investment expenses, exclusive of the portions of any general expenses included, were less than an amount computed on the basis of one-fourth of 1 per centum of the book value of the mean of the invested assets. In other words, the term "investment expenses" when considered in connection with the term "general expenses" in the

proviso can only mean expenses directly and entirely relating to the investment department, for the language of the proviso permits a taxpayer to include in its investment expenses general expenses in whole or in part to an amount which when combined with the actual investment expenses does not exceed one-fourth of 1 per centum of the mean of invested assets. Therefore, under the strict letter of the statute, and no reason appearing to require the conclusion that the intention of Congress differed from the ordinary meaning of the language used, the plaintiff having assigned a portion of its general expenses to its investment expenses, and since its actual investment expenses allowed by the Commissioner exceeded one-fourth of 1 per centum of the book value of the mean of plaintiff's invested assets, no additional amount in respect of the allocation made by plaintiff can be allowed.

If the plaintiff in this case should be permitted to make a division of the salaries of the general officers and employees and to assign to and include in investment expenses the amounts which it seeks to include in this case, we would be forced under our interpretation to restrict the total allowance in each year for investment expenses to an amount which would be only slightly more than one-half of the amount which the Commissioner actually allowed for each year. The Commissioner's allowance in each year, although it exceeded one-fourth of 1 per centum of the mean of plaintiff's assets, was correct for the reason that he was able to allocate and say absolutely just what plaintiff's actual investment expenses had been. We are now of opinion that this construction of the provision under consideration conforms in every respect and in each class of cases to both the letter and the spirit of the statute and to the known facts out of which grew the special plan, of which the deduction for investment ex-

---

[11] Among other expenses of a general nature which could with equal facility be apportioned and assigned in part to the investment department, the following might be mentioned: (1) General advertising; (2) salaries of legislative counsel, public relations counsel, and advertising manager; (3) costs of publishing and mailing annual reports and financial statements; (4) sums paid to inactive general employees or pensioners and contributions to pension funds; (5) travel-

ing expenses of company officials attending agency and national conventions; (6) dues and assessments paid to certain bureaus and associations; (7) costs of books, newspapers, and periodicals not used exclusively in either the investment or underwriting departments; (8) public liability insurance premiums; (9) charitable donations and contributions; and (10) license fees paid to various states for the privilege of doing business therein.

penses is an important part, for the taxation·of life insurance companies.

The cases of Sun Life Insurance Company of America v. United States, supra, and Volunteer State Life Insurance Company v. Commissioner of Internal Revenue, 27 B.T.A. 1149, cited and followed in the Sun Life case, did not consider and discuss the deduction under section 203(a) (5) in the light of certain facts and circumstances which here appear and which we now think are controlling upon the question involved.

Plaintiff is therefore not entitled to an additional deduction on account of the salaries of officers and employees which the facts show were for services relating "to matters in all departments of plaintiff's business, that is, in both the investment and underwriting departments."

The second question is whether, in determining net income, a life insurance company is entitled to a deduction on account of reserves held for health and accident (casualty) insurance; that is, are casualty reserves to be treated and deducted as "reserves required by law" within the meaning of the provisions of the taxing act relating solely to life insurance companies. Reserves for accidental *death* benefits have been allowed and are not in controversy here—finding 20.

The provisions of the Revenue Act of 1928 pertinent to this question are as follows:

"§ 201. Tax on Life Insurance Companies.

"(a) Definition. When used in this title the term 'life insurance company' means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds. * * *

"§ 202. Gross Income of Life Insurance Companies.

"(a) In the case of a life insurance company the term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents. * * *

"§ 203. Net Income of Life Insurance Companies

"(a) *General rule.* In the case of a life insurance company the term 'net income' means the gross income less * * *.

"(2) *Reserve funds.* An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subsection [tax free interest], of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, plus (in case of life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation) 4 per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only; * * *." 26 U.S.C.A. §§ 201(a), 202(a), 203(a) (2) note.

The corresponding provisions of the Revenue Act of 1932 are identical with the foregoing, except that subdivision (2) of section 203 (a), 26 U.S.C.A. § 203(a) (2), provides for the use of a rate of 3¾ per centum of the mean of the reserve funds instead of 4 per centum in any case where the reserve funds are computed at an interest assumption rate lower than 4 per centum.

The facts show that in computing the deduction for each year at the percentage specified, plaintiff included the reserves held under health and accident insurance written by it. For 1929 and 1930 the Commissioner of Internal Revenue permitted plaintiff to include in its reserve fund, on which the deduction under section 203 (a) (2) of the Revenue Act of 1928 was computed, the reserves held by plaintiff for health and accident (casualty) insurance in the case of both "Active Lives" and "Disabled Lives," but for 1931 and 1932 he allowed such casualty reserves to be included only for "Active Lives" and excluded the reserves for "Disabled Lives." Plaintiff seeks to recover alleged overpayments for 1931 and 1932 on the ground that the health and accident reserves held by it in the case of "Disabled Lives" were properly to be included in determining the total of the "reserve funds required by law" within the meaning of the above-quoted sections, 201 (a) and 203 (a) (2).

The defendant, while not seeking an affirmative judgment, since the assessment

of any additional tax for any of the four years involved is barred, contends here that the allowance of any reserve deduction on account of health and accident insurance, whether for "Active Lives" or "Disabled Lives," is erroneous. In other words, the defendant contends that under sections 201 (a) and 203 (a) (2), Acts of 1928 and 1932, the reserve to be used in determining the deduction to be allowed to a Life Insurance Company means the amount which is attributable to and represents the value of the life-insurance elements of the policy contracts and does not include casualty reserves. It is the position of defendant that only those reserves held under contracts involving life contingencies are deductible by a corporation taxable as a life insurance company.

It is agreed that plaintiff is in fact and in law a life insurance company and that it is taxable only under those provisions of the statutes which relate exclusively to life insurance companies. As stated under the first issue, the provisions which impose the tax only upon investment income of such companies have been the same under all the revenue acts since, and including, the Revenue Act of 1921, and under these statutes a life insurance company is not taxable on underwriting income or on earned premiums, or gains or profits which it may realize on the sale or disposition of any of the numerous assets which it necessarily owns. For this reason the taxing acts do not permit deductions to life insurance companies upon the same basis as deductions are allowed to other classes of insurance companies or to corporations in general. The section under which the deductions on account of health and accident reserves here involved are claimed by plaintiff to be allowable provides for a deduction of an amount equal to 4 per centum of the mean of the reserve funds required by law to be held at the beginning and end of the taxable year. This provision relates exclusively to life insurance companies, either stock or mutual, and does not relate and is not to be found in the provisions of the statutes relating to the taxation of casualty insurance companies or to other classes of insurance. The provisions of section 203 (a) (2) are entirely unlike the provisions of section 208 (c) (1) (A) of the Revenue Acts of 1928 and 1932, 26 U.S.C.A. § 207 (c) (1) (A) permitting "Mutual Insurance Companies other than Life" to deduct the net addition required by law to reserve funds. Such companies are taxable upon premium received and all other income, and the deduction of the net addition to reserve funds is allowed in addition to the deductions specified in section 23, 26 U.S.C.A. § 23.

The question here, therefore, is whether the term "reserve funds required by law" (sec. 203 (a) (2)), which relates to reserves of life insurance companies only, includes, when considered with section 201 (a), reserves held by a life insurance company on account of outstanding policies of health and accident insurance, that is, casualty insurance, as well as reserves held on account of outstanding life insurance policies. We are of opinion that reserves held under health and accident insurance contracts are not properly to be included in the reserve fund required by law to be held by a life insurance company for the purpose of deduction from income for tax purposes.

The definition of a life insurance company as set forth in section 201 (a) quoted above was enacted for the purpose of taxing insurance companies according to the predominant kind of insurance issued by them. It was not necessary to define other insurance companies for the reason that the revenue acts treat them separately and classify them either as "Insurance Companies other than Life or Mutual," which includes a casualty insurance company (sec. 204, Act of 1928, 26 U.S.C.A. § 204), or as "Mutual Insurance Companies other than Life" (sec. 208). The gross income of insurance companies taxable under sections 204 and 208 includes the combined gross amount derived during the taxable year from investment income, from underwriting income, and from gain from the sale or other disposition of property, less the deductions therein specified.

Basically the question whether the health and accident (casualty) reserves claimed by plaintiff are a part of its "reserve funds required by law" within the meaning of section 203 (a) (2) depends upon the question whether such health and accident reserves are to be included in the reserves for life insurance and annuity contracts for the purpose of determining whether an insurance company is a "life insurance company" within the meaning of section 201 (a) of the Revenue Act of 1928 for the purpose of taxation under sections 202 and 203. Both parties agree as to this. The first consideration, therefore, is directed to the comparative to be

used in determining whether an insurance company is a "life insurance company." We are of opinion that since the purpose of the definition contained in section 201 (a) is one of classification, the test provided is the amount of reserve funds held for life insurance and annuity contracts as against the reserve funds of the company concerned which are held for health and accident insurance, and that the words "total reserve funds" used in that section mean the sum of the life insurance and annuity contract reserves and the health and accident, or casualty, reserves. This section was dealing only with technical insurance reserves, rather than with the total of such reserves plus reserves for pure liabilities. The purpose of the section was to provide a simple rule to be applied in determining whether an insurance company which writes life insurance and annuity contracts, and, also, health and accident insurance, should be taxed under the special plan specified in sections 202 and 203 relating exclusively to life insurance companies, or whether such companies should be taxable under section 204.

Insurance companies issuing life insurance and annuity contracts may, and many do, write health and accident insurance. This is casualty insurance, and is the only kind of insurance other than life that a life insurance company writes or is permitted to write under the laws of the various states. The statutes of the State of Washington, the home state of plaintiff, classify health and accident insurance as casualty insurance, and also specifically provide that this is the only kind of insurance other than life that a life insurance company is permitted to issue.[12] For these reasons we think it is clear that the comparative in the definition stated by Congress under which an insurance company is to be classified either as life or as a casualty company is that existing between the reserves of such company for life insurance and annuity contracts and its health and accident reserves. When section 242 of the Revenue Act of 1921, which was the same as section 201 (a) here involved, was under consideration by the Finance Committee of the Senate[13] a representative of the Treasury Department was asked by the committee to "Explain that 50 per cent of its total reserve funds, and why

take 50 per cent instead of some other figure?" to which Dr. T. S. Adams, representing the Treasury Department, replied "Some companies mix with their life business, accident and health insurance. It is not practicable for all companies to disassociate those businesses so that we have assumed [in drafting the bill which was then being considered by the committee] that if this accident and health business was more than 50 per cent of their business, as measured by their reserves, it could not be treated as a life insurance company. On the other hand, if their accident and health insurance were incidental and represented less than 50 per cent of their business we treated them as a life insurance company."

If the phrase "total reserve funds" at the end of section 201 (a) means the total of all the reserves for all classes of insurance written by the insurance company under consideration, the definition would under plaintiff's contention, be rendered meaningless and every insurance company writing life insurance would be a life insurance company even though its casualty reserves constituted the largest proportion of all its insurance business. If the term "total reserve funds" refers to and includes the company's total *liabilities,* for which all state laws require insurance companies to hold reserves, the definition would be rendered useless.

The net value reserves of a life insurance company, whether or not it also writes health or accident insurance, always constitute the greater portion of its total liability reserves. This is true of any insurance company, whether life or casualty. This is disclosed by the published reports of "The New York State Insurance Department", which show that in all life insurance companies reporting in that state the net value reserves of such companies constitute approximately from 85 to 90 per centum of their total liabilities. These averages are also true in respect of plaintiff's net value reserves. While it does not report to the New York Insurance Department, since it does no business in that state, its annual statements are published in "Best's Life Insurance Reports," which show that plaintiff's net value reserves for all classes of insurance issued by it have always averaged about 90 per centum or

---

[12] Pierce's Code (1929), Vol. 1, Washington General Statutes. Sections 2990 (83), 2991 (84), 2999 (92), and 3001 (94).

[13] Hearings before the Committee on Finance of the Senate, 67th Cong., 1st Sess. (H.R. 8245), pp. 92, 93.

more of its total net liabilities, that is, about the same as all other insurance companies doing the same class of insurance business. In these circumstances there would be no necessity for a classification upon the basis provided in that section since the reserves of an insurance company writing life insurance and annuity contracts, whether or not it also writes health or accident insurance, held on account of the net values of insurance contracts would never be less than 50 per centum of its total liabilities. The nature of the insurance business precludes that possibility.

Inasmuch as the comparative for determining whether an insurance company is taxable as a life insurance company under section 202, or as a casualty company under section 204, is the ratio between its life reserves and its casualty reserves, and, by this test, it being undisputed that plaintiff is a life insurance company, its tax is to be exclusively determined under the provisions relating to life insurance companies.

This brings us to the next phase of the question, which is whether casualty reserves, that is, the reserves for health and accident insurance issued by plaintiff, come within the provisions of section 203(a) (2) which, as hereinbefore stated, allow a deduction to a life insurance company of an amount equal to 4 per centum of the mean of the reserve funds required by law to be held at the beginning and end of the taxable year.

Since the statute places life insurance companies in a special class and taxes them upon only a portion of the gross income as defined in cases of other classes of corporations and insurance companies, we are of opinion that Congress used the term "reserve funds" in section 203(a) (2) in the same sense in which it was used in section 201(a) just considered. In other words, when an insurance company has been classified as a life insurance company in accordance with section 201(a), the reserves to be included under section 203 in determining the 4 per centum deduction are those reserves which are held by such company on account of its life insurance and annuity contracts. This excludes reserves for such casualty insurance as a life insurance company may write. Additional reasons which we think require the conclusion that casualty reserves are excluded in determining the reserve deduction allowable to a life insurance company are (1) that Congress placed such a company in a special class and taxed it upon only its investment income and that this classification and method of taxation were due to the fact that reserves for life insurance and annuity contracts really belong to the policyholders, and (2) that premiums paid on casualty insurance belong to the insurance company and the reserves required to be maintained therefor by state laws are, in effect, and from the standpoint of Federal taxation, liability or solvency reserves because if the casualty, to which the health and accident contract relates, does not happen or if the policy should lapse or be canceled the company is never called upon to make any payment. This, we think, was the reason for taxing casualty companies in the manner specified in section 204. An insurance company incorporated as a casualty company does not write life insurance, although some life insurance companies write casualty insurance.

The meaning of the phrase "reserve funds required by law" as used in the taxing acts in its relation to a life insurance company has been decided in a number of cases. Helvering v. Illinois Life Insurance Company, 299 U.S. 88, 90, 91, 57 S.Ct. 63, 81 L.Ed. 56, involved deductions claimed for reserves held on account of the survivorship investment fund feature of certain life insurance policies, and the question was whether reserves for this feature of the policies were to be included in determining the allowable deduction. The court said at pages 90, 91, 57 S.Ct. page 64:

"The phrase 'required by law' includes only reserves that directly pertain to life insurance. Other reserves, even though required by state statutes regulatory of the business authorized to be carried on by life insurance companies, are not included. * * *

"Its [the life insurance company's] life insurance liability arises upon the death of the insured. Ascertainment of the reserves attributable to that liability involves consideration of the amount contributed to them out of premiums plus interest for a period estimated on the basis of mortality. The survivorship investment fund feature of these policies has no relation to life insurance risks. [Italics supplied.]"

The case of Continental Assurance Co., Inc. v. United States, 79 Ct.Cl. 756, 765, 8 F.Supp. 474, involved deductions for reserves held for coupons attached to cer-

tain life insurance policies of a stock company, which were equivalent to dividends in the case of a Mutual Life Insurance Company, and the question was what reserves of a life insurance company are included in the term "reserve funds required by law." We held that the reserve contemplated in the taxing act is that fund which when added to the present value of future net premiums is equal to the present value of future death claims; that is, the mathematical equivalent of the obligation incurred by the company to pay the sum insured at the death of the policyholder, or upon the surrender and cancelation of the policy. The principle decided in that case was approved in Helvering v. Inter-Mountain Life Insurance Company, 294 U.S. 686, 690, 55 S.Ct. 572, 575, 79 L.Ed. 1227, in which the court held that "In life insurance the reserve means the amount, accumulated by the company out of premium payments, which is attributable to and represents the value of the life insurance elements of the policy contracts."

The facts in the case at bar show that plaintiff's reserves for health and accident insurance are not held on account of life insurance and that they are not of the same character as technical *life* insurance reserves. They do not include life contingencies. Such casualty reserves are calculated upon the basis of Tables of Probabilities as reserves for other classes of casualty risks are computed. These reserves are required by the law of Washington to be computed upon the net premium basis and they do not involve the element of life insurance as a liability. The life risk is the basis of life insurance reserves. Although the experience tables used in computing health and accident reserves take into consideration the mortality element, this is merely incidental and does not involve the element of life risk as in the case of life insurance. The purpose of considering the mortality element and the nature of the risk in casualty insurance is the opposite of that of the reserve for the life risk in a life insurance policy. The mortality element in a life policy requires the establishment of a reserve sufficient to meet the policy obligations at maturity; that is, at death. In the case of health and accident insurance death, instead of maturing the liability, terminates the risk with respect to the payment of liability for disability benefits. The health and accident reserve is never built up or maintained to provide for a

life risk, inasmuch as there is no such risk which the company can ever be called upon to meet in health and accident insurance.

Plaintiff insists that the health and accident reserves here involved are deductible for the reasons that they are set up and maintained out of premiums, are calculated upon an experience table applicable to the nature of the risk, and are held to meet contingent policy obligations at maturity. But under the scheme for taxing life insurance companies this is not controlling and does not render them of the same character as life reserves. All casualty reserves have these characteristics. But life insurance reserves, as hereinbefore mentioned, are in effect, and always in the end, the property of the policyholder. This was the reason for the adoption of the special method of taxing life insurance companies. The holder of a life insurance policy may demand and receive the reserve which is shown in the table of loan and non-forfeiture value of the policy, and if the policy lapses before death a life insurance company must account to the insured for the full reserve value of the policy. This is not true of any other form of insurance and more particularly of casualty insurance involved in the case at bar. The net value of the health and accident policy is not increased by the reserves. They are never returnable in any amount to the policyholder if the policy lapses, is surrendered, or otherwise terminates. Moreover, the contingency for which such reserves are maintained may never happen. In that event the interest included in the reserve, and non-taxed, is released to the absolute use and benefit of the company. There is no provision in the statute relating to life insurance companies for the taxation of this interest element of the casualty reserves, when so released. This, we think, is the very basis of the definition, for if a life insurance company is to be taxed only upon its income from investments and not on its premium income, or from gains or profits generally, the Congress did not intend to allow such company a deduction in respect of premium income that belonged to it even though in respect of such premium income it *might* later be called upon to make some payment.

Why was a company which writes life and also casualty insurance made taxable as a life insurance company or a casualty company according to the amount of reserves maintained for each class of insur-

ance? We think the answer is, that if the greater proportion of its business is life insurance it would be unfair to tax it upon its premium receipts and gains or profits, because the net premiums belong to the policyholders, whereas, if the larger proportion of the business is casualty insurance, the company should be taxed under section 204 on its premium receipts and other income, because such premiums belong to the company, and the reserves for any payments which the company might be called upon to make would have no place for tax purposes in the plan of taxation since they are, from that point of view, in the nature of liability or solvency reserves. It is well settled that liability or solvency reserves are not deductible by the company taxable as a life insurance company. As above stated, if a company is taxed as a life insurance company and is permitted to deduct casualty reserves which it may never be called upon to use for the purpose of making any payments under its contracts, such company would be obtaining an undue advantage for the reason that a portion of the only income taxable under the provisions relating solely to life insurance companies would entirely escape taxation to the extent that the health and accident policies otherwise might lapse, be canceled, or terminate by death. We think that Congress intended the reserve deductions to conform to the special plan for taxation of life insurance companies. The inclusion of reserves maintained out of premiums which belonged, when paid, to the company would not comport with the statutory plan.

Plaintiff contends, however, that if casualty reserves are to be excluded in any cases it was not the intention of the act to exclude them in combined policies of Life, Health, and Accident Insurance. We think this is unimportant. The health and accident portion of the combined policies are entirely separate contracts, New York Life Insurance Company v. United States, 2 Cir., 12 F.2d 643. The health and accident premiums are separately shown therein. The specimen policy in evidence in this case shows that with the page covering casualty insurance removed it is a complete life insurance policy. When the insured desires health and accident insurance it is only necessary for the company to insert a page covering that class of insurance in its regular insurance policy form. Moreover, the disability insurance may be discontinued without affecting the

life insurance and the reserves held on account of the health and accident insurance do not enter into the amount of the reserves held by the company on account of life insurance covered by the policy, or the surrender, cash, or loan value shown therein. The two contracts are as separate and distinct as if written in separate policies. Plaintiff combines the two classes of insurance in one policy for the reason that it does not write disability insurance except when the applicant also purchases life insurance.

Plaintiff further contends that it is entitled to a deduction in respect of the health and accident reserves for the reason that they are technical insurance reserves. We think this contention cannot be sustained for the reasons above stated and for the further reason that we are here concerned with a life insurance company and the casualty reserves in question are not technical *life* insurance reserves. Their allowance would therefore result in a deduction to a life insurance company for casualty reserves which even a casualty company is not permitted to take for this class of insurance under the taxing provisions relating to such companies. The decisions of the United States Board of Tax Appeals in Equitable Life Assurance Society of the United States v. Commissioner of Internal Revenue, 33 B.T.A. 708; Monarch Life Insurance Company v. Commissioner, 38 B.T.A. 716; Pan-American Life Insurance Company v. Commissioner, 38 B.T.A. 1430; and Oregon Mutual Life Insurance Company v. Commissioner, (memorandum opinion), docket nos. 85182 and 88299, do not appear to have given consideration and weight to this distinction. These decisions of the Board of Tax Appeals appear to rest upon the proposition that any reserve which is a technical insurance reserve is deductible by a life insurance company taxable under those provisions relating exclusively to such companies. The distinction between technical *life* insurance reserves and other technical insurance reserves, including liability or solvency reserves, has been observed in the leading cases, especially the more recent decisions upon the subject of technical insurance reserves, both in respect to the question of the net additions to reserve funds arising under the earlier revenue acts and to the deduction of 4 per centum of the mean of the reserve funds under the provisions relating entirely to life insurance companies in the Revenue

Act of 1921 and subsequent acts. A comparison of the decisions in McCoach v. Insurance Company of North America, 244 U.S. 585, 37 S.Ct. 709, 61 L.Ed. 1333; United States v. Boston Insurance Co., 269 U.S. 197, 46 S.Ct. 97, 70 L.Ed. 232; New York Life Insurance Co. v. Edwards, 271 U.S. 109, 46 S.Ct. 436, 70 L.Ed. 859, and other cases similar in character, with the decisions in Helvering v. Inter-Mountain Life Insurance Co., supra; Continental Assurance Co., Inc. v. United States, supra; and Helvering v. Illinois Life Insurance Co., supra, discloses an adherence to the principle that "reserve funds required by law" within the meaning of the taxing acts are those technical insurance reserves which are peculiar to the character of insurance companies claiming the deduction. In other words, a company which is taxable as a life insurance company may deduct only technical life insurance reserves which is the reserve attributable to and represents the value of the life insurance elements of the policy contracts.

Plaintiff also contends that inasmuch as interest is credited to the health and accident reserves here involved a proper consideration of its contractual obligations would require that such interest be exempted from taxation under the statute which lays a tax only upon investment income. This is a matter of policy which rests with Congress. It was evidently considered that the amount of casualty premiums which the company would probably never be called upon to pay under its health and accident insurance would sufficiently compensate for the taxation of any interest element in such reserves. Moreover, the interest element was involved in other reserves which have been denied as deductions to a life insurance company in certain of the cases hereinbefore cited. In addition, it should again be pointed out in this connection that this form of casualty insurance is taxable, if at all, under the provisions of the statute relating to insurance companies other than life or mutual. The basis upon which such insurance is taxable is quite different from that of life insurance companies and no deduction whatever is allowed on account of the mean of the reserve funds, but instead a deduction is allowed for claims accrued or losses incurred. In the classification of a

company for the purpose of Federal taxation, advantages as well as disadvantages to the taxpayer may occur. By being classified as a life insurance company plaintiff avoids the tax on premium income from its health and accident insurance for the reason that the provisions relating to a life insurance company do not lay a tax upon earned premiums nor upon gains or profits on the sale or other disposition of property. Neither does the statute, insofar as it relates to life insurance companies, permit deductions on account of that class of business. As was said by the court in Shapleigh Hardware Co. v. United States, 8 Cir., 81 F.2d 697, "The question is not whether this is a deduction which the taxpayer should, in fairness, be permitted to take, but whether it is a deduction which is clearly provided for in the Revenue Act." The presence of interest in a reserve does not, of itself, entitle the company to take the reserve as a deduction. The reserve disallowed by the court in Helvering v. Illinois Life Insurance Co., supra, was created out of premiums and improved with part of the company's interest earnings.

We think the portion of the legislative history of the Revenue Bill of 1932 referred to by plaintiff in support of its arguments on the interest content of the health and accident reserves here in issue has no important bearing upon the question whether such reserves are deductible. The part relied upon only explains the reason due to the decline in interest rates for changing the deduction on account of the reserves required by law within the meaning of the taxing statutes from 4 to $3\frac{1}{2}$ per centum.

Finally plaintiff contends on this issue that a deduction should be allowed on account of reserves for health and accident insurance because of the prior regulations and practice of the Treasury Department under which such reserve deductions have been allowed until recently, when the Treasury Department began to disallow deductions on account of reserves for "Disabled Lives." The past regulations and practice of the Treasury Department with reference to reserve deductions have not been entirely consistent. The regulations and practice in existence subsequent to January 1920 [14] and prior to Treasury Decision 4615, December 18,

---

[14] The date of the decision in Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S.Ct. 155, 64 L.Ed. 297. See Continental Assurance Co., Inc. v. Unit-

1935 (33 T.D. 288), were not in harmony with the decisions of the Supreme Court hereinbefore cited. Although departmental regulations and practice will, in a proper case, be given great weight, they cannot abridge the law and they can only stand if they correctly interpret the statute. As was said by the court in Koshland v. Helvering, 298 U.S. 441, 445, 56 S.Ct. 767, 769, 80 L.Ed. 1268, 105 A.L.R. 756, "The question here, however, is not merely of our adopting the administrative construction, but whether it should be adopted if in effect it converts an income tax into a capital levy." Similarly the question here is whether the past practice relied upon by plaintiff has permitted deductions to be taken by a life insurance company which are not allowable under the statute. Compare M. E. Blatt Co. v. United States, 59 S.Ct. 186, 83 L.Ed. ——, decided December 5, 1938. Inasmuch as deductions from gross income are matters of grace, only those items which clearly come within the class to which the particular statutory provision relates may be allowed. There is no room for implications or inferences, except as they are inevitable from the context. The rule that statutes levying taxes may not be extended by implication beyond the clear import of the language used nor their operations enlarged so as to embrace matters not specifically pointed out applies with equal or greater force to the determination and allowance of deductions. Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87, 91, 93, 55 S.Ct. 50, 79 L.Ed. 211. Cf. United States v. Pleasants, 59 S.Ct. 281, 83 L.Ed. ——, decided January 3, 1939, Pleasants v. United States, 22 F.Supp. 964, 86 Ct.Cl. 679.

The present regulations as amended by T.D. 4615, supra, are not inconsistent with our conclusion that health and accident reserves are not deductible by a life insurance company. The regulations, as so amended, provide, in effect, that for the purpose of the deduction by a life insurance company the reserve contemplated does not include reserves not involving life contingencies.

We are of opinion that plaintiff is not entitled to recover and the petition must be dismissed. It is so ordered.

ed States, 8 F.Supp. 474, 79 Ct.Cl. 756, 768. Massachusetts Mutual Life Insurance Co. v. United States, 56 F.2d 897, 74 Ct.Cl. 162, 166–171, Id., Ct.Cl., 56 F. 2d 897.